Walter R. Hart, J.
Plaintiff brought this action to recover two installments of $100 each alleged to be due for the months of May and June, 1958 under the terms of an agreement made with defendant on April 21,1953. Plaintiff is the widow of one Perez Mereminsky and is the stepmother, and also the aunt, of defendant, his son. At the time of his death Perez Mereminsky and the defendant were partners in a watch material business; the father owned a 51% interest and the son 49%.
Perez Mereminsky died on February 14, 1953, leaving a will in which he bequeathed his interest in the watch material business to the defendant and named the defendant as executor. The plaintiff claimed that she, as widow of the, decedent, was *23 entitled to a larger share of the estate than had been provided for her in the will, and on April 21, 1953 she and the defendant entered into a written agreement which provided, in part, as follows:
1. The said parties having determined their respective rights and considered the assets and liabilities of the estate, of said deceased, have and by this instrument do hereby fix the value of the interest of said widow Anna Mereminsky (including the sum paid for consideration of the respect and devotion due to her), to be the sum of Fifteen Thousand ($15,000.00) Dollars, plus a further sum of One Hundred ($100.00) Dollars per month for the rest of her natural life, except as hereinafter stated.
2. The said sum of $15,000.00 shall be paid by said Fritz Mereminsky as Executor and individually as follows: $1,000.00 by check simultaneously with the execution of this agreement and a like sum by check each and every month thereafter on the 15th day of the month, with a five day grace period, until the said $15,000.00 shall be paid in full. In the event said Anna Mereminsky shall die prior to said payments having been made in full, then and in that event the subsequent unpaid balance shall cease and no longer be paid to the estate of Anna Mereminsky, but shall be equally distributed to Celia Modlinger, Albert Herman, Fritz Mereminsky and Annette Goldstein. Said widow, Anna Mereminsky, shall be deemed to have a valid first prior right to all other rights, claims or encumbrances, in the sum of $15,000.00 against the property and assets of the estate of said decedent as against the rights and claims of Fritz Mereminsky. In the event of the failure or the default of the Executor or Fritz Mereminsky, individually, to pay the said $1,000.00 monthly payments as they become due, then and in such event, at the time of said non-payment and after said five day grace period, said widow, Anna Mereminsky shall have every and all right that she may be entitled to in the estate of the decedent herein, as if this compromise agreement had not been entered into, and, also, said Fritz Mereminsky, individually, agrees to indemnify and pay to said widow the balance then due monthly.
3. The monthly payments of $100.00 hereinabove provided for shall be made on the 15th day of each and every month commencing with the 15th day of April, 1953, provided however that should Anna Mereminsky remarry then all subsequent payments of $100.00 per month shall cease and come to an end and it is further provided that said monthly payments of $100. shall be conditioned upon the continuance by said Fritz Mereminsky in the same or similar watch material business, regardless of the location of same or whether he will operate as an individual, or as a partner or under a corporate name and it is further provided that said $100.00 monthly payments shall be made by said Fritz Mereminsky individually provided that the net profit of said watch material business is $5,000.00 or more.
* * *
7. At the time said last payment of $1,000.00, totaling $15,000.00, is paid to Anna Mereminsky, general releases are to be exchanged by the parties hereto and said release of Anna Mereminsky is also to include estate of Perez Mereminsky. Said release to Anna Mereminsky is to contain a clause that it is subject to payment of $100.00 per month by Fritz Mereminsky as provided in this agreement.
The $15,000 was duly paid to the plaintiff, who executed and delivered a receipt and release therefor. The payments of *24 $100 a month were made for a period of five years, from April, 1953 to and including April, 1958. No payment was made thereafter and this action was commenced on June 18, 1958. The defendant interposed an answer of general denial, and plaintiff moved for summary judgment. Defendant opposed the motion on the ground that his promise to make the payments of $100 a month was qualified and conditional. The motion was denied on July 30,1958, the decision being as follows: ‘‘ Upon the foregoing papers this motion is denied. The question of fact raised in the defendant’s affidavit must be adjudicated at a trial and may not be disposed of summarily. The fact that the defendant may have the burden of proving his contention that the business did not earn $5000 net etc. as he claims cannot deprive him of the trial he seeks. It may be he cannot prove it, but the law must give him that opportunity.”
At the opening of the trial it was agreed that no question of consideration was involved. Defendant’s counsel stated that the defense would be: (1) That the provision “provided that the net profit of said watch material business is $5000 or more ’ ’ is vague and ambiguous in that it does not say what period is to be taken into consideration in determining the profit, and (2) “ The other question is ‘ upon whom does the burden of proof rest. ’ If this is a condition precedent then the plaintiff must plead and prove these things before she can recover.” It was stipulated that the defendant had made payments of $100 a month to the plaintiff from April, 1953 to April, 1958, but defendant’s counsel refused to stipulate that these payments were made ‘ ‘ pursuant to the terms of the contract. ’ ’
Plaintiff proved the making of the contract and it was marked in evidence. Plaintiff then rested.
Defendant moved to dismiss the complaint on the ground that the plaintiff had failed to make out a prima facie case, arguing that paragraph 3 of the agreement provided for certain contingencies which were conditions precedent, and that the plaintiff had not pleaded or proved that these conditions were fulfilled; furthermore, that the provision with regard to $5,000 net profit was ambiguous and indefinite in that it did not say what period was to be taken into consideration in determining the net profit. Plaintiff’s counsel pointed out that the amount of $100 a month was also provided for in paragraph 1 of the contract, which fixes the value of the plaintiff’s interest in the estate. He argued that paragraph 3 provided for ‘ ‘ absolute payment with an exception,” and that whether the conditions be called conditions precedent or conditions subsequent, the agreement shows that the payments were to be made, and that if thereafter some condi *25 tion should occur which would allow the defendant to escape the obligation he might then show it and cease making the payments ; that the defendant could escape the obligation to make these payments by proving that his business did not earn $5,000 or more.
The court ruled that the plaintiff had proved a prima facie case and that the burden now rested upon the defendant to prove his defense in order to escape the obligation imposed by the agreement; that in common parlance earnings of ‘ ‘ $5,000.00 or more ” meant $5,000 or more a year, and that if some period other than a year had been agreed upon the defendant should so testify. Defendant’s counsel then stated for the record that the earnings of the business were $5,000 or more per year, and the trial was adjourned to afford the defendant, who was not in court, an opportunity to come in and testify. Upon the adjourned date no testimony was taken. The defendant rested without offering any proof and renewed the motion made at the end of plaintiff’s case.
Point I in defendant’s brief on appeal is that “ liability under the contract clause relied on is contingent on the happening of future events,” and Point III is that “ plaintiff neither pleaded nor proved the happening of the contingent events necessary to creat liability on the part of defendant.” In support of these points the defendant argues that Clause 1 of the agreement merely fixes the value of the interest of the plaintiff in the estate of her deceased husband and places no obligation of any kind whatsoever on the defendant; that, therefore, in order to establish any obligation on the part of the defendant to make payments to the plaintiff, reliance must be placed solely on Clause 3, and that Clause 3 imposes three separate conditions precedent to the creation of liability to make any monthly payments, namely:
1. That plaintiff remain unmarried;
2. That defendant continue in the watch material business, and
3. That the net profit of the watch material business is $5,000 or more.
I do not agree with these contentions. It seems to me (1) that there is implicit in Clause 1 of the agreement a promise on the part of the defendant to pay to the plaintiff the amount of her share of the estate as agreed upon, in consideration for her giving up her right to oppose probate of the will; and (2) that the conditions imposed in Clause 3 are conditions subsequent and not conditions precedent.
The agreement recites, among other things, that Anna Mereminsky claims that an amount in addition to that provided in *26 the will should be paid to her as widow of Perez Mereminsky; that Fritz Mereminsky, as executor, has filed the will for probate; that Anna Mereminsky has consented to the probate of the will; and that ‘ ‘ in consideration of the premises and the mutual covenants and agreements herein contained * * * the parties hereby agree to and with each other as follows.” Clause 1 then says that the parties fix the value of Anna Mereminsky’s interest at $15,000, plus a further sum of $100 a month for life “ except as hereinafter stated.” The only exceptions appearing thereafter are the three conditions set forth in Clause 3 which provide for cessation of the $100 monthly payments under certain circumstances. When the plaintiff executed this agreement and refrained from contesting probate of the will, she furnished consideration for the defendant’s promise to make the payments to her. There was nothing further on her part to be done. The defendant was obligated to make the payments agreed upon. The conditions set forth in Clause 3 are in the nature of escape clauses, providing that the defendant’s liability to make the payments would cease in the event that certain things should occur.
The following concise definition of conditions precedent and conditions subsequent is set forth in Hershey v. Carter (137 N. Y. S. 2d 207, 208): “A condition precedent is one whose existence is necessary for the obligation to come into being. A condition subsequent is one that, if it arises, will defeat an existing obligation.” In the instant case the obligation was an existing one, it came into existence with the execution of the agreement. Clearly, there can be no question but that the possible remarriage of the plaintiff was a condition subsequent; so, also, was the possibility that the defendant might go out of the watch material business. As to the third, that is that “ the net profit of said watch material business is $5,000.00 or more ” (for whatever period the parties had in mind), it seems to me that it is necessarily implied that the profits were $5,000 or more at the time the promise to pay was made, and that this provision was that the obligation to pay would cease, or at least be suspended, if the business did not continue to show that profit. Consequently, this condition also is a condition subsequent.
If it were to be held that this condition is a condition precedent, it would follow that the defendant could cease making these payments whenever and as often as it suited him to do so, and each time the plaintiff sought to recover the burden would be thrown upon her to establish what the profits of the defendant’s business were. In Clark, New York Law of Contracts (vol. 2, § 960, pp. 1481, 1482) the following statement is made: “ The *27 courts according to the modern view do not favor, it has been said, a construction which creates from mutual stipulations a condition precedent. As said by Seldext, J.: ‘ As the effect of a condition precedent is to prevent the court from dealing out justice to the parties according to the equities of the case, it is not surprising that we find it so frequently said that constructions productive of such conditions are not to be encouraged. Parties must be held strictly to their contracts; and where they have agreed in terms or by plain implication to a condition which is to bar them of a recovery according to what is equitable and just, they must abide by the consequences. But courts are to see that such was the intention of the parties, before they are held up to so rigid a rule. ’ ” (Citing Tipton v. Feitner, 20 N. Y. 423, 432.)
The circumstances of this case do not lend support to the interpretation placed upon this condition by the defendant.
Inasmuch, therefore, as the liability of the defendant to make the payments of $100 a month came into being with the making of the agreement, and was not one which might arise later upon the occurrence of some future event, the burden was not upon the plaintiff to plead and prove that the conditions had been fulfilled. As was said in Wood & Selick v. Ball (190 N. Y. 217) at page 223: “ This is in accordance with the general rule that performance of a condition subsequent, which continues in force a right already acquired, need not be pleaded, while performance of a condition precedent, by which the right itself is acquired in the first instance, must be pleaded.”
Defendant’s Point II is that “ the contract clause is indefinite and unenforceable.” Defendant argues that all three conditions in Clause 3 are conditions precedent; that no liability on his part is created unless all three events occur and exist jointly; that the condition with regard to the profits of his business is ambiguous and vague; that the matter of net profits is joined in one sentence with the monthly payments and that the only possible reasonable interpretation that could be given to the language is that it means monthly profits, but that the language is too incomplete and meager to permit even this conclusion; that the court is limited in interpreting the contract to the instrument as written and cannot make a contract for the parties; and that the result is that there is no contract for the court to interpret. In the view that I take, that the condition in question is a condition subsequent, the result of holding that the language is so vague as to render the provision unenforcible would be to render void only the escape clause and not the entire contract. Although the language of this proviso is beyond question ambiguous, the con *28 tract lacks no element essential to establish the defendant’s liability and is not rendered unenforcible by this ambiguity in a condition subsequent. Furthermore, this ambiguity could have been resolved by resorting to parol evidence to ascertain the intention of the parties, but the defendant refused the opportunity to testify with regard to it. While the trial court refused to make a definite finding that the words 1 ‘ net profit of * * * $5,000.00 or more ’ ’ meant $5,000 or more a year, I am in accord with the court’s statement that in common parlance it would mean $5,000 or more a year, and I believe that the court was correct in holding that the burden was upon the defendant to come forward with evidence to show, if he could, that some period other than a year was intended.
In Clark, New York Law of Contracts (vol. 2, § 797, p. 1188) the following language is quoted from the opinion in Booth v. Cleveland Rolling Mill Co. (74 N. Y. 15, 21): “ It is a cardinal principle that every agreement or covenant must be interpreted according to its peculiar terms, and so as to carry out the intent of the parties, and it follows that the ruling upon, and the interpretation of, one agreement will seldom aid in the construction of another, except as it may illustrate some general rule of interpretation applicable to both.” The author goes on to say, however, that certain rules or canons of interpretation have been announced by the courts, which have through frequent application attained somewhat the dignity of rules of law, and cites Gillet v. Bank of America (160 N. Y. 549). In that opinion (pp. 555-556) the following* rule is set forth: “ In the construction of written contracts it is the duty of the court, as near as may be, to place itself in the situation of the parties, and from a consideration of the surrounding* circumstances, the occasion and apparent object of the parties, to determine the meaning and intent of the language employed. Indeed, the great object, and practically the only foundation of rules for the construction of contracts is to arrive at the intention of the parties. This is a most conspicuous and far-reaching rule, and involves the nature of the instrument, the condition of the parties and the objects which they had in view, and when the intent is thus ascertained, it is to be effectuated unless forbidden by law.”
Clark also says (§ 804, p. 1197), “ If the meaning of a contract is in any way doubtful the practical interpretation given it by the parties as evidenced by their conduct and acts tends strongly to show their intention and is given weight by the courts in the construction of the contract ’ ’ and cites the following from Woolsey v. Funke (121 N. Y. 87, 92): “ The practical interpretation * * * is a consideration of very great impor *29 tance. * * * There is no surer way to find out what parties meant than to see what they have done. ’ ’
Applying these rules to the instant case, it seems to me to he clear that the intention of the parties was to settle the claim of the widow against the estate so as to allow the will to be probated as drawn; that the value of her interest was determined and the defendant agreed to make payment of what had been agreed upon as due her, both in his capacity as executor and individually; that it was contemplated at the time the agreement was executed that after the probate proceedings were concluded and the estate was wound up, leaving the watch material business entirely in the hands of the defendant, that the defendant would continue to be liable individually to make payments of $100 a month to the plaintiff for her life, so long as she remained unmarried and he remained in the watch material business and the profits of the business were not less than $5,000 a year.
The defendant paid the plaintiff $100 a month for five years. Although his counsel would not concede that these payments were made “ pursuant to the terms of this contract,” no other reason for doing so appears. While it is argued that the fact that the payments were made is not proof that the defendant made them because he was bound by the contract to do so, such payments showed the practical interpretation that the defendant put upon the contract and, as such, is “ a consideration of very great importance ” (Woolsey v. Funke, supra, p. 92). The defendant having made these payments for many years, he may not now be heard to say, without offering any proof, that the clause was ambiguous or that the payments were made voluntarily and without any relationship to the profits of the business.
The defendant was not taken by surprise in this action. The plaintiff’s motion for summary judgment was denied on the ground that the defendant was entitled to an opportunity to prove his defense that the business did not earn $5,000 net, even though he had pleaded only a general denial. Upon the trial he was given every opportunity to put in a defense, and the trial was adjourned so that he might come in and testify. He chose not to do so, but to adhere to his position that as a matter of law the conditions in Clause 3 of the agreement were conditions precedent and that the burden was on the plaintiff to prove them.
The judgment should be affirmed, with $25 costs.
Pette and Bbown, JJ., concur.
Judgment affirmed, etc.