*1079
 
 Memorandum. The order of the Appellate Division is affirmed, with costs.
 

 Guilford Industries, a manufacturer of fabric, had a factoring agreement with FNB Financial Company (FNB) whereby the latter would guarantee payment of certain accounts receivable owed by purchasers whom it deemed credit worthy. FNB had, accordingly, approved the credit of one such purchaser, plaintiff Jack L. Inselman & Co, up to a maximum of $60,000. The agreement between Guilford and FNB in no way restricted or altered the rights of Guilford to enter into purchase and sale contracts involving credit transactions but merely defined the limits of guarantee imposed by FNB.
 

 Guilford also made certain contracts with Inselman which included, as credit terms, that "If Buyer’s [Inselman] * * * credit limit becomes exhausted by deliveries under this or any other orders * * * Buyer thereafter shall pay cash, less allowed discounts, if any, on or before delivery. If Buyer fails, within a reasonable time, to pay cash in advance when so required, Seller [Guilford] may, at its option, cancel the undelivered portion of this order or contract.” The contracts specifically defined delivery as "acceptance of goods by common carrier.”
 

 During the summer of 1974 Guilford sold and delivered to Inselman various fabrics for the sum of $54,300.18. The invoices were assigned to and guaranteed by FNB as provided in the factoring agreement, and the purchase of these goods depleted the bulk of its line of credit. Additional goods, valued at $76,273.75 were manufactured by Guilford, stored in its warehouse and identified to additional purchase contracts with Inselman. In accordance with the agreement, identification of the goods to the contracts, while in such warehouse storage, obligated Inselman to pay the purchase price even though this occurred prior to actual delivery. FNB, under the terms of its factoring agreement, refused to extend credit approval beyond the initial $60,000 limit. Consequently Guilford refused to deliver these additional goods unless Inselman paid cash, as provided under the terms of their contracts. Inselman unjustifiably insisted on immediate delivery without cash payment, else it would consider the contract canceled, and the demand was properly rejected by Guilford. Subsequently, FNB, under the belief that it had a repurchase agreement with Inselman, bought the goods from Guilford thereby releasing Inselman from liability to Guilford for the purchase price. Inselman did not repurchase the fabrics but
 
 *1080
 
 rather instituted this action for tortious interference with the contract between plaintiff and Guilford.
 

 Inselman argues that FNB’s imposition of credit limitations with a concomitant request for payment before credit would be extended, and its subsequent purchase of the goods, forms the basis for a claim of tortious interference with the contract between Inselman and Guilford. FNB asserts, and correctly we think, that the actions taken by it and Guilford were entirely within their rights under the respective agreements. In addition it counterclaimed (1) for damages sustained as a result of Inselman’s refusal to repurchase, (2) for $54,300.18 on invoices assigned to it by Guilford, covering goods sold and delivered and (3) for $10,510.26 on invoices assigned to it by Malden Mills, Inc., another factoring client, covering other goods sold and delivered. The defendant moved for summary judgment dismissing the complaint and for judgment on its second and third counterclaims. Special Term denied defendant’s motion in all respects and the Appellate Division reversed, dismissed the complaint and granted judgment on the second and third counterclaims. We affirm.
 

 When Inselman exhausted its line of credit, Guilford was entitled, under the credit terms of the agreement, to demand cash payment before delivery. FNB had no obligation to extend further credit and was fully within its rights in demanding payment of the outstanding invoices before further credit would be extended. As to its subsequent purchase of the goods, this occurred well after the plaintiff had repudiated its contract. In order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other party
 
 (Israel v Wood Dolson Co,
 
 1 NY2d 116, 120;
 
 Campbell v Gates,
 
 236 NY 457;
 
 Lamb v Cheney & Son,
 
 227 NY 418; 32 NY Jur, Interference, § 20), a situation not here present. An essential element of the case against FNB, then, is a breach by Guilford. No such breach had occurred and thus the complaint was properly dismissed. Summary judgment on the second and third counterclaims involving goods sold and delivered, in the absence of evidence disputing liability, was correctly granted.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur in memorandum.
 

 Order affirmed.