**Birendra Mohan SHARMA, Astral Holding Corporation, Freesia Shipping Corporation, Sun Lily Maritime, Inc., Doman Tankers Inc., and Zodiac Finance Corporation, Plaintiffs,**

v.

**SKAARUP SHIP MANAGEMENT CORPORATION, Ole Skaarup, Bent Larsen, and Chemical Bank, Defendants.**

**No. 86 Civ. 3236 (LLS).**

United States District Court, S.D. New York.

Oct. 13, 1988.

Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, New York City (Arthur H. Ruegger, of counsel), for plaintiffs.

Zalkin, Rodin & Goodman, New York City (Harold N. Schwinger, of counsel), for defendant Chemical Bank.

Sullivan & Cromwell, New York City (William M. Dallas, Jr., of counsel), for defendants Skaarup Ship Management Corp., Ole Skaarup and Bent Larsen.

## OPINION AND ORDER

STANTON, District Judge.

Plaintiffs' claims arise from a series of loan agreements they had with defendant Chemical Bank ("Chemical") to finance three tankers. Plaintiffs claim that Chemical conspired with the other defendants to prevent plaintiffs from repaying or refinancing their loan obligations, with the result that ownership of the tankers was transferred to entities controlled by defendant Skaarup Ship Management Corporation ("SSMC").

SSMC, Ole Skaarup and Bent Larsen (collectively, the "Skaarup defendants") and Chemical have made separate motions to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). Chemical also moves to strike certain allegations of the amended complaint pursuant to Fed.R.Civ. P. 12(f). For the following reasons, the Skaarup defendants' motion is granted, and

Chemical's motion is granted in part and denied in part.

## FACTUAL BACKGROUND

Plaintiffs Freesia Shipping Corporation, Sun Lily Maritime, Inc. and Doman Tankers, Inc. are Liberian corporations which were the owners, respectively, of the tankers Wayusut, Winged Dolphin and Valiant Porpoise. Plaintiff Zodiac Finance Corporation is a related corporation that acted as a source of financing for the three ship companies. Plaintiff Astral is a holding company that owns all the outstanding stock of Freesia, Sun Lily, Doman and Zodiac. Plaintiff Birendra Mohan Sharma is the president and a director of the corporate plaintiffs.

Between 1977 and 1981 Chemical extended several loans to plaintiffs to finance the tankers. By September 1981, during a general decline in the shipping industry, plaintiffs were in default in repaying the principal of their loans. Over the next four years they negotiated with Chemical for extensions and other accomodations of their loan obligations. Beginning in September 1983, plaintiffs were also in default on the interest payments due to Chemical. At that time, Chemical decided to inspect the ships and their records. They retained SSMC, which is one of plaintiffs' competitors, to conduct the inspections and advise Chemical concerning the ships' operation and maintenance. Defendants Ole Skaarup and Bent Larsen are officers or principals of SSMC.

In late August, 1984, the Valiant Porpoise arrived at the Burrard Yarrows Shipyard ("Burrard") in Vancouver for a survey. Plaintiffs had agreed to pay Burrard in three installments. After a conversation with Mr. Larsen in which he stated that plaintiffs were a bad credit risk, Burrard demanded a bank guarantee for the full amount of the survey fee, which plaintiffs refused to provide because of their previous agreement. On August 31, 1984, after a second conversation with Mr. Larsen, Burrard arrested the Valiant Porpoise.

On September 12, 1984, plaintiffs and Chemical signed a contract in which Chemi-cal agreed to accept a lump sum of $16.5 million (approximately half of plaintiffs' outstanding indebtedness) and gave plaintiffs 28 days to obtain a refinancing commitment. In return, plaintiffs agreed that they would not "without the prior consent of [Chemical] enter into any time charterparty of a longer duration of three months or any voyage charterparty which in the ordinary course of events would last for more than three months or any demise charterparty." Plaintiffs also signed bills of sale for the three tankers in favor of three ship companies owned by SSMC that were to be held in escrow pending plaintiffs' refinancing efforts. Finally, plaintiffs agreed to release any claims that they might have against Chemical arising prior to September 12, 1984.

The September 12 agreement was modified and extended by agreements dated October 31, 1984, January 15, 1985 and March 8, 1985. While the agreements were in effect, Chemical refused to approve several charter opportunities for the Winged Dolphin and the Wayusut that would have lasted more than three months.

On two occasions Chemical asked C.T. Bowring & Co. (Insurance) Limited ("Bowring") to cancel plaintiffs' insurance policies on the three tankers. On September 7, 1984, Chemical advised Bowring that both the Winged Dolphin and the Valiant Porpoise had been arrested and asked them to cancel the insurance policies on all three tankers. On or about October 23, 1984, Chemical advised Bowring that it was calling in the tankers' bills of sale, and again asked them to cancel the insurance policies.

On April 26, 1985, ownership of the three tankers was transferred to the three companies owned by SSMC.

### Allegations of the Complaint

Plaintiffs claim that Chemical and the Skaarup defendants had decided by September 1983 to take plaintiffs' tankers away and "park" them with SSMC, and that all of defendants' actions after that time were in furtherance of a scheme to deprive plaintiffs of their tankers. Count I of the complaint is against Chemical for

breach of its express and implied duty of good faith. Count II is against all the defendants for conspiracy to breach Chemical's duty of good faith. Count III is against the Skaarup defendants for interference with contractual relations. Count IV is against all the defendants for *prima facie* tort. Count V is against Chemical for breach of its duty of confidentiality. Count VI is against all the defendants for conspiracy to breach Chemical's duty of confidentiality. Count VII is against all the defendants for tortious interference with existing and prospective maritime contracts. Count VIII is against the Skaarup defendants for malicious arrest and seizure of the Valiant Porpoise at Burrard on August 31, 1984. Plaintiffs seek compensatory damages of sixty million dollars, punitive damages of one hundred million dollars on counts III, IV, VII and VIII, and costs, disbursements and attorneys' fees.

### Procedural History

In May and June 1986, defendants brought motions to dismiss the complaint for lack of subject matter jurisdiction. On June 30, 1986, plaintiffs moved for leave to amend the complaint. In August 1986, defendants moved to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and to strike certain allegations of the complaint as improper pleading pursuant to Fed.R.Civ.P. 8(a) and (e). In an order dated June 5, 1987, the court allowed plaintiffs to file an amended complaint "in compliance with the requirements of Fed.R.Civ.P. 8(a) and 8(e)," denied the motions to dismiss for lack of subject matter jurisdiction, ordered certain paragraphs of the complaint stricken, dismissed one count of the proposed amended complaint, and denied the remaining relief sought by defendants "without prejudice to renewal following service of an amended complaint." Plaintiffs filed an amended complaint which bases jurisdiction on diversity of citizenship and adds a count for tortious interference with existing and prospective maritime contracts, strikes the paragraphs specifically ordered stricken in the June 5 order, and makes minor changes in wording. The amended complaint does not otherwise differ from the original complaint.

### DISCUSSION

1. Propriety of the Motions to Dismiss

■ Plaintiffs argue that the motions to dismiss are procedurally improper because Rule 12 prohibits successive motions to dismiss. They cite two cases, *FRA S.p.A. v. Surg-O-Flex of America, Inc.*, 415 F.Supp. 421 (S.D.N.Y.1976) and *Thorn v. New York City Dep't of Social Services*, 523 F.Supp. 1193 (S.D.N.Y.1981), in support of their position. However, neither the language of Rule 12 nor the cases cited by plaintiffs supports denial of the motions in this case.

Rule 12 specifically allows for successive motions to dismiss for failure to state a claim. Although defenses of lack of jurisdiction over the person, improper venue and insufficiency of process are waived if not raised in a party's first responsive pleading, "A defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." Fed.R.Civ.P. 12(h).

In *FRA*, 415 F.Supp. at 428, the court held that a second motion to dismiss was frivolous, and that denial of the motion would further the purpose of Rule 12 to prevent dilatory motion practice. In *Thorn*, 523 F.Supp. at 1196 n. 1, the court did consider a second motion to dismiss because it found that it was not brought for the purpose of delaying the action. As can be seen from the discussion that follows, defendants' motions are not frivolous. Nor were they brought to delay the action. The dismissal of the original motions to dismiss was with leave to renew after the filing of an amended complaint, and specifically contemplated renewed motions. In fact, the renewed motions have narrowed the issues before the court, and should lead to a shorter discovery period and trial.

The motions to dismiss are not procedurally improper, and they are not, therefore, denied on that ground.

## 2. The Conspiracy Claims

The complaint alleges in two counts that defendants conspired to breach Chemical's contractual duties. Count II charges all the defendants with conspiracy to breach Chemical's express and implied duty of good faith, and Count VI charges all the defendants with conspiracy to breach Chemical's implied duty of confidentiality. Neither count states a claim against any of the defendants.

■ The conspiracy claims fail against Chemical because under New York law a party to a contract is not liable to another contracting party for conspiracy to breach the contract. *Special Event Entertainment v. Rockefeller Center, Inc.*, 458 F.Supp. 72, 78 (S.D.N.Y.1978); *Bereswill v. Yablon*, 6 N.Y.2d 301, 189 N.Y.S.2d 661, 160 N.E.2d 531 (1959). Plaintiffs have withdrawn their request for damages against Chemical on the conspiracy counts (plaintiffs' memorandum in opposition to Chemical's motion to dismiss at page 23–24, note * *), stating that they do not seek double recovery from Chemical for both breach of contract and conspiracy to breach the contract.

■ The conspiracy claims fail against the Skaarup defendants because New York law does not recognize a claim against a third party for conspiring with a party to the contract to breach the contract. *Callahan v. Gutowski*, 111 A.D.2d 464, 488 N.Y. S.2d 519 (3d Dep't 1985). Nor can the Skaarup defendants be held liable for conspiring among themselves, as plaintiffs argue. "Generally a corporate officer or employee will not be held individually liable for conspiracy where he acted in the interests of the corporation, did not exceed his authority, and where he did not act with the purpose of benefitting himself rather than the corporation." *Two Clinton Square Corp. v. Friedler*, 91 A.D.2d 1193, 1194, 459 N.Y.S.2d 179, 181 (4th Dep't 1983); *see also Nathanson v. Brown & Williamson Tobacco Corp.*, 189 Misc. 1024, 68 N.Y.S.2d 914, 919 (N.Y.Co.1947).

The complaint alleges that the conspiracy had as its object transfer to SSMC of ownership of the three tankers. The actions of Mr. Larsen and Mr. Skaarup benefitted SSMC. There is no allegation that they exceeded their authority. Plaintiffs argue that Mr. Larsen and Mr. Skaarup should be held individually liable because, as principals of SSMC, any benefit to the corporation would also benefit them personally. However, every corporate employee stands to gain personally in some measure when his actions benefit the corporation. This fact does not convert their actions into individual tortious conduct so long as their actions also benefitted the corporation. *Cf. Johnston v. Baker*, 445 F.2d 424, 427 (3d Cir.1971) (corporate employees liable for conspiracy where they conspired with outsiders and acted for purely personal motives).

The conspiracy claims fail to state a claim because Chemical cannot be held liable for conspiring to breach its own contract, and the Skaarup defendants cannot be held liable for conspiring among themselves. Therefore, counts II and VI are dismissed with prejudice.

## 3. *Prima Facie* Tort

■ Count IV is against all the defendants for *prima facie* tort. For plaintiffs to recover for *prima facie* tort, they must allege and prove that defendants acted with "exclusive malicious motivation." "The sole motivation for the damaging acts must have been a malicious intention to injure the plaintiff. Where there are other motives, such as profit, self-interest, or business advantage, there is no recovery under the doctrine of *prima facie* tort." *Marcella v. ARP Films, Inc.*, 778 F.2d 112, 119 (2d Cir.1985); *See also Demalco Ltd. v. Feltner*, 588 F.Supp. 1277, 1279 (S.D.N.Y. 1984); *Rodgers v. Grow–Kiewit Corp.*, 535 F.Supp. 814, 816 (S.D.N.Y.), *aff'd*, 714 F.2d 116 (2d Cir.1982); *Stratford Group, Ltd. v. Interstate Bakeries Corp.*, 590 F.Supp. 859, 865 (S.D.N.Y.1984); *Curiano v. Suozzi*, 63 N.Y.2d 113, 480 N.Y.S.2d 466, 469 N.E.2d 1324 (1984); *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 464 N.Y.S.2d 712, 720, 451 N.E.2d 459, 476 (1983).

Even accepting all of plaintiffs' factual allegations as true, it is clear from the face of the complaint that plaintiffs will not be able to prove that defendants acted with exclusive malicious motivation. Both Chemical and Skaarup received a business advantage from the scheme to deprive plaintiffs of the tankers. SSMC took ownership of three tankers from a competitor, which clearly gave it a business advantage. Chemical received a business advantage because the tankers were transferred to SSMC subject to existing ship mortgages. Chemical could then expect full payment of the tankers' indebtedness, rather than accepting approximately half the outstanding indebtedness from plaintiffs or continuing extensions and accomodations of the loans.

Count IV fails to state a claim for *prima facie* tort because the existence of a business or profit motive appears on the face of the complaint. Therefore, Count IV is dismissed with prejudice.

### 4. Tortious Interference with Contractual Relations

The complaint alleges tortious interference with contractual relations in two counts. Count III is against the Skaarup defendants for interfering with plaintiffs' contracts with Chemical by conspiring and acting with Chemical to frustrate plaintiffs' ability to refinance their loan obligations. Count VII is against all the defendants for tortious interference with existing and prospective maritime contracts. Plaintiffs allege that defendants interfered with the survey of the Valiant Porpoise at Burrard, the insurance contracts with Bowring, a time charter on the Winged Dolphin with British Petroleum, charters in India on the Winged Dolphin and the Wayusut, and other charter opportunities for the Winged Dolphin.

The elements of a claim for tortious interference with contractual relations are: "(1) a valid contract between plaintiff and a third party for a specific term; (2) defendant's knowledge of the contract; (3) defendant's intentional procuring of its breach; and (4) damages." *Diehl & Sons, Inc. v. International Harvester Co.*, 445

F.Supp. 282, 291 (E.D.N.Y.1978); *Demalco Ltd. v. Feltner*, 588 F.Supp. 1277, 1280 (S.D.N.Y.1984); *Jack L. Inselman & Co. v. FNB Financial Co.*, 41 N.Y.2d 1078, 396 N.Y.S.2d 347, 349, 364 N.E.2d 1119, 1120 (1977). In addition, defendant's acts must have been the "but for" cause of the breach. *Demalco* at 1280; *Special Event Entertainment v. Rockefeller Center, Inc.*, 458 F.Supp. 72, 78 (S.D.N.Y.1978).

Several courts have also required that plaintiff allege and prove exclusive malicious motivation. *See e.g., Demalco* at 1280; *Sullivan v. American Airlines, Inc.*, 613 F.Supp. 226, 232 (S.D.N.Y.1985); *Strobl v. New York Mercantile Exchange*, 561 F.Supp. 379, 386 (S.D.N.Y.1983); *Sadowy v. Sony Corp.*, 496 F.Supp. 1071, 1080 (S.D.N.Y.1980); *Williamson, Picket, Gross, Inc. v. 400 Park Ave. Co.*, 47 N.Y.2d 769, 417 N.Y.S.2d 460, 391 N.E.2d 296 (1979). However, in *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628, 632, 406 N.E.2d 445, 448 (1980), the New York Court of Appeals held that, because an existing contract is entitled to greater protection than pre-contractual relations, the fact that a defendant had a business motive will excuse his actions only in the case of interference with pre-contractual relations:

> Although his status as a competitor does not protect the interferer from the consequences of his interference with an existing contract, it may excuse him from the consequences of interfering with prospective contractual relationships, where the interference is intended at least in part to advance the competing interest of the interferer, no unlawful restraint of trade is effected, and the means employed are not wrongful.

This approach was followed in *Maison Lazard et Compagnie v. Manfra, Tordella & Brooks, Inc.*, 585 F.Supp. 1286, 1291 (S.D.N.Y.1984). Wrongful means includes physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and "some degrees of economic pressure." *Guard–Life*, 428 N.Y.S.2d at 632, 406 N.E.2d at 448.

a. *Interference with Pre–Contractual Relations*

██ Plaintiffs allege that defendants interfered with charter opportunities for the Winged Dolphin from British Petroleum, charters in India on the Winged Dolphin and the Wayusut, and other charter opportunities for the Winged Dolphin. None of these charter opportunities resulted in a contract. Plaintiffs do not allege that defendants used any of the wrongful means identified in *Guard–Life*. Defendants' actions were motivated, at least in part, by business advantage. *See* section 3, *supra*. Therefore, plaintiffs fail to state a claim for interference with prospective contractual relations, and the claims in Count VII relating to charter opportunities for the Winged Dolphin and the Wayusut are dismissed with prejudice.

b. *Interference with Existing Contracts*

██ The remaining claims in Count VII are deficient because the complaint fails to allege that the contracting party breached its obligations to plaintiffs. "In order for the plaintiff to have a cause of action for tortious interference of contract, it is axiomatic that there must be a breach of that contract by the other party." *Jack L. Inselman & Co. v. FNB Financial Co.*, 41 N.Y.2d 1078, 396 N.Y.S.2d 347, 349, 364 N.E.2d 1119, 1120 (1977); *see also Demalco*, 588 F.Supp. at 1280. Plaintiffs allege that defendants gave confidential financial information to Burrard and to Bowring, but they do not allege that either party breached its contract with plaintiffs. Rather, plaintiffs state that they refused Burrard's request for a bank guarantee because they had a prior agreement.

██ The claims in count III must be dismissed because plaintiffs fail to allege that Chemical would not have breached its contractual obligations to plaintiffs in the absence of the Skaarup defendants' actions. Count III charges the Skaarup defendants with interference with Chemical's contracts with plaintiffs. The complaint alleges that plaintiffs entered into a series of loan agreements with Chemical, that Mr. Skaarup and Mr. Larsen knew of the agreements, that they intended to procure a breach of the agreements by causing Chemical to breach its duties of good faith and confidentiality, that their actions procured breaches of the agreements, and that defendants were damaged by the loss of its three tankers.

However, plaintiffs do not allege and cannot prove that defendants were the "but for" cause of Chemical's breach. Paragraph 75 of the complaint alleges that the Skaarup defendants procured the breach "by conspiring and acting with Chemical to make it impossible for plaintiffs to arrange the necessary financing, which Chemical was obligated to allow and encourage." The allegation that the Skaarup defendants acted in concert with Chemical implies that Chemical would have breached its obligations even without the involvement of the Skaarup defendants. In no way do plaintiffs allege that the Skaarup defendants were the motivating force behind Chemical's breach.

The claims in Count VII for interference with contracts with Burrard and Bowring fail to state a claim because they do not allege a breach by either party. Because the dismissal rests on a deficiency in pleading, these claims are dismissed without prejudice. Count III fails to state a claim because it does not allege that the Skaarup defendants were the "but for" cause of the breach. It is also duplicative of the conspiracy claim in count II, and must be dismissed for the reasons stated in section 2, *supra*. Count III is, therefore, dismissed with prejudice.

5. Wrongful Seizure

██ Count VIII, in its entirety, states that "All of the Defendants other than Chemical, by and through their conduct alleged hereinabove, wrongfully and maliciously caused the arrest and seizure of the VALIANT PORPOISE in Vancouver on or about August 31, 1984." The Skaarup defendants contend that Count VIII is properly viewed as a claim for malicious prosecution, and that it fails to state a claim. Plaintiffs argue that they seek damages for wrongful seizure, which is an admiralty

claim, and not for malicious prosecution. However, as the Skaarup defendants point out, "the maritime tort jurisdiction of the federal courts is determined by the locality of the accident and ... the maritime law governs only those torts occurring on the navigable waters of the United States." *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 205, 92 S.Ct. 418, 421, 30 L.Ed.2d 383 (1971). Since the complaint alleges that the arrest of the Valiant Porpoise occurred in Vancouver, British Columbia the tort clearly did not occur on the navigable waters of the United States, and no maritime claim exists.

 Nor have plaintiffs stated a claim for malicious prosecution. In fact, their brief states that they do not seek recovery for malicious prosecution. (Plaintiffs' memorandum in opposition to Skaarup motion at 31). The elements of a claim for malicious prosecution are

(1) the commencement and prosecution of a judicial proceeding against the plaintiff, (2) by or at the instance of the defendant, (3) without probable cause, (4) with malice, (5) which has terminated in favor of the plaintiff in the malicious prosecution action, (6) to his injury and (7) where the proceeding complained of was civil in nature, it must also be shown that the plaintiffs suffered interference from some provisional remedy.

*Ellman v. McCarty,* 70 A.D.2d 150, 420 N.Y.S.2d 237, 241 (2d Dep't 1979). *See also, Belsky v. Lowenthal,* 62 A.D.2d 319, 405 N.Y.S.2d 62, 64 (1st Dep't 1978), *aff'd,* 47 N.Y.2d 820, 418 N.Y.S.2d 573, 392 N.E. 2d 560 (1979). The only factual allegation in the complaint concerning the arrest of the Valiant Porpoise is paragraph 31, which states that "That same day, August 31, 1984, after a further phone conversation with Bent Larsen heightening the shipyard's concerns, Burrard arrested the VALIANT PORPOISE in Vancouver." The only elements of the claim that are made out are the provisional remedy of arrest, and that it was done with malice. Plaintiffs do not allege that any proceeding terminated in their favor. Although they claim that a telephone call from Larsen prompted Burrard to arrest the Valiant Porpoise, they do not allege that the action was commenced by or at the instance of the Skaarup defendants, merely that the conversation heightened Burrard's concerns.

Since plaintiffs have not alleged that the wrongful seizure took place on the navigable waters of the United States, and because they have not alleged the elements of a claim for malicious prosecution, Count VIII fails to state a claim. Therefore, count VIII is dismissed with prejudice.

### 6. Breach of Contract Claims

Plaintiffs allege breach of contract in two counts. Count I is against Chemical for breaching its express and implied duties of good faith and fair dealing by: appointing and maintaining SSMC as its agent; advising Bowring to cancel plaintiffs' insurance contracts; unreasonably refusing charters for the Wayusut and the Winged Dolphin for more than three months; and communicating to unknown persons that plaintiffs were a serious credit risk. Count V states that

There was an implied obligation and covenant of all the loan agreements and by virtue of Plaintiffs holding deposit accounts at Chemical, 180 Strand, London and at 20 Pine Street, New York that Chemical would not disclose information concerning the accounts or transactions relating thereto except with the consent of those Plaintiffs.

Plaintiffs have identified three entities—the Skaarup defendants, Bowring, and "various persons who will remain unknown until discovery, including Mr. Sreenivassen from Citibank, New York"—to whom Chemical is alleged to have given confidential financial information.

 Chemical argues that the contract claims must be dismissed for failure to allege performance of conditions precedent. Rule 9(c) of the Federal Rules of Civil Procedure allows a plaintiff to aver generally that all conditions precedent have been performed or have occurred. Chemical argues that plaintiffs could not have made such an allegation because they were in default on their loan obligations. A condition precedent is a fact that must exist before a duty to perform arises. *Mereminsky v. Mereminsky,* 20 Misc.2d 21, 188

N.Y.S.2d 771, 777 (2d Dep't 1959); Rest.2d Contracts § 224. However, Chemical's duties of good faith and confidentiality are not conditional upon performance by plaintiffs. *Cf. Rawcliffe v. Aguayo*, 108 Misc. 2d 1027, 438 N.Y.S.2d 697, 699 (Kings Co. 1981). Therefore, plaintiffs do not have to allege that all conditions precedent were performed.

### a. *Duty of Good Faith*

Under New York law, every contract contains an implied duty of good faith and fair dealing, *Filner v. Shapiro*, 633 F.2d 139, 143 (2d Cir.1980); *Wood v. Duff–Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917), and an implied covenant that neither party will prevent the other from performing. *Lowell v. Twin Disc, Inc.*, 527 F.2d 767 (2d Cir.1975). However, no term may be implied in a contract that conflicts with the express terms of the contract. *Neuman v. Pike*, 591 F.2d 191, 195 (2d Cir.1979); *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 304–05, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983).

 Chemical argues that the claim that it breached its duty of good faith and fair dealing by unreasonably refusing to approve charters for more than three months must be dismissed because it had a contractual right to refuse such charters. Paragraph XIV of the September 12 agreement states that plaintiffs will not enter into charters of more than three months duration without the prior consent of Chemical. This is analogous to a lease that forbids assignment or subletting without the landlord's consent, which permits the landlord to refuse for no reason. *See e.g., Mann Theatres Corp. v. Mid–Island Shopping Plaza Co.*, 94 A.D.2d 466, 464 N.Y. S.2d 793, 797 (2d Dep't 1983), *aff'd*, 62 N.Y.2d 930, 479 N.Y.S.2d 213, 468 N.E.2d 51 (1984). Since an implied term that obligated Chemical to exercise its right to refuse charters of more than three months reasonably would conflict with the express terms of the parties' contract, such a term will not be implied. Therefore, the claim based on unreasonable refusal to approve charters for the Winged Dolphin and the Wayusut in Count I is dismissed with prejudice.

### b. *Duty of Confidentiality*

 New York recognizes an implied duty of confidentiality between a bank and its depositors, *Graney Development Corp. v. Taksen*, 92 Misc.2d 764, 400 N.Y.S.2d 717, 720 (Monroe Co.), *aff'd*, 66 A.D.2d 1008, 411 N.Y.S.2d 756 (4th Dep't 1978), but not between a bank and its borrowers. *Id.* Information about the status of a borrower's loan is

> not information that the borrower would normally expect would be kept confidential. One who defaults on his debts owed to a merchant cannot expect that his default will be kept a secret. While a creditor who publishes his debtor's defaults to the public at large may be liable for breach of privacy, he will not be liable (in the absence of malice) if he divulges the default not to the public at large, but privately to selected individuals.

*Id.* (citations omitted). Therefore, count V fails to state a claim to the extent that it is based on the loan agreements. Plaintiffs may only seek damages for any information that Chemical divulged to third parties about the status of plaintiffs' accounts.

### c. *Claims Barred by the September 12 Agreement*

 Chemical also argues that the claims in Count I for appointing and maintaining Skaarup as its agent and for giving confidential information to Bowring should be stricken because they are barred by the September 12 agreement. The June 5 order states that "All claims against defendant Chemical Bank for any matter arising prior to September 12, 1984 are dismissed as barred by the release executed by the plaintiffs on that date." Chemical appointed Skaarup prior to September 12, 1984. Chemical twice told Bowring to cancel insurance policies on the tankers. The claims based on the appointment of Skaarup and giving confidential information to Bowring prior to September 12, 1984 are stricken as immaterial and improper pleading pursuant to Fed.R.Civ.P. 12(f).

### 7. Capacity to Sue

 Both motions claim that plaintiffs Sharma, Astral and Zodiac lack capacity to

sue on behalf of their corporations. However, the only claims remaining in the complaint are contract claims against Chemical. Sharma, Astral and Zodiac were parties to the agreements dated September 12, 1984, October 31, 1984, January 15, 1985 and March 8, 1985. As such, they are proper parties to an action for breach of those agreements.

**8. Motions to Strike**

Chemical moves to strike paragraphs 21 through 41 as barred by the September 12 agreement. All of the allegations contained in paragraphs 21 through 41 relate to acts which occurred prior to September 12, 1984. These paragraphs are stricken pursuant to Fed.R.Civ.P. 12(f) as immaterial and improper pleading.

Chemical also moves to strike the allegations that this court has jurisdiction under its admiralty jurisdiction, 28 U.S.C. § 1333, and because Chemical is a national banking association, 12 U.S.C. § 632. Plaintiffs have withdrawn these allegations. (Plaintiffs' memorandum in response to Chemical's motion to dismiss at page 59). These allegations are, therefore, stricken from the complaint.

**9. Summary Judgment**

 Finally, Chemical requests that summary judgment in its favor be granted on any claims that are not stricken or dismissed. Fact questions exist as to whether Chemical breached its duty of good faith and fair dealing through its arrangement with the Skaarup defendants, by advising Bowring to cancel plaintiffs' insurance in October 1984 and by giving confidential information to unknown persons, and whether Chemical breached its duty of confidentiality to plaintiffs by disclosing information about their Chemical accounts to third parties. In light of the fact that discovery has been stayed while these motions were pending, summary judgment is not appropriate at this time. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202 (1986).

**10. Damages**

Plaintiffs seek punitive damages on Counts III, IV, VII and VIII. Since these claims have been dismissed, the prayer for punitive damages is dismissed as well. Plaintiffs also seek, on each count, costs, attorneys' fees and disbursements. Under the American Rule, the prevailing litigant may not recover attorneys' fees from the opposing party absent a statutory or contractual basis for an award of attorneys' fees. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). No such statute or contractual agreement is relied on by plaintiffs. Therefore, the prayer for attorneys' fees is stricken pursuant to Fed. R.Civ.P. 12(f).

**CONCLUSION**

Plaintiffs are directed to file an amended complaint, complying with the rulings herein, within thirty days.