**Paula Corbin JONES, Plaintiff,**

v.

**William Jefferson CLINTON and Danny Ferguson, Defendants.**

**No. LR–C–94–290.**

United States District Court,
E.D. Arkansas,
Western Division.

July 21, 1994.

Daniel M. Traylor, Traylor Law Firm, Little Rock, AR, and Gilbert K. Davis and Joseph Cammarata, Fairfax, VA, for plaintiff.

Kathlyn Graves, Wright, Lindsey & Jennings, Stephen C. Engstrom, Wilson, Engstrom, Corum, Dudley & Coulter, Little Rock, AR, and Robert S. Bennett, Skadden, Arps, Slate, Meaghen & Flom, Washington, DC, for defendant Clinton.

Bill W. Bristow, Seay & Bristow, Jonesboro, AR, and Robert Batton, Jacksonville, AR, for defendant Ferguson.

## MEMORANDUM AND ORDER

SUSAN WEBBER WRIGHT, District Judge.

Plaintiff Paula Corbin Jones seeks civil damages from the President of the United States for actions that, with one exception, are alleged to have occurred prior to his assuming office. The matter is before the Court on motion of the President for permission to file a motion to dismiss on grounds of Presidential immunity and to defer the filing of any other motions or pleadings until such time as the issue of immunity is resolved. The plaintiff has responded in opposition to the motion.[1] For the reasons that follow, the Court finds that the President's motion should be and hereby is granted.

1. During a telephone conference held on June 16, 1994, separate defendant Danny Ferguson stated that he had no position with respect to the matter now before the Court.

## I.

This complaint, which was filed on May 6, 1994, arises out of an alleged incident that is said to have occurred on May 8, 1991, when President Clinton was Governor of the State of Arkansas. The plaintiff was a state employee at the time, and she claims that the President sexually harassed and assaulted her during a conference being held at a hotel in Little Rock, Arkansas.

The plaintiff asserts four claims in her complaint against the President. In Counts I and II, she alleges that President Clinton conspired to and did deprive her of her constitutional rights to equal protection and due process under the Fifth and Fourteenth Amendments of the United States Constitution. She contends that the President discriminated against her because of her gender by sexually harassing and assaulting her, by imposing a hostile work environment on her, and by causing her to fear that she would lose her job. She further claims that she was subjected arbitrarily to the fear of losing her job or experiencing other adverse actions in relation to her job and work environment. In Count III, plaintiff asserts a claim of intentional infliction of emotional distress or outrage, and claims in Count IV that the President, through his press aides and attorney, defamed her by denying the allegations that underlie this lawsuit.[2]

The President informs the Court that he will file a motion to dismiss the complaint without prejudice to its reinstatement after he leaves office, on grounds that sitting Presidents are constitutionally immune from having to litigate private suits for civil damages. He states that the immunity motion will raise serious issues which go to the constitutionality of compelling a sitting President to litigate private civil damages claims, as well as to this Court's authority to proceed in this case in the first instance. The President argues the Court should allow him initially to assert the immunity issue alone, thereby permitting that question to be resolved prior to filing any other pleadings in the case.

## II.

The President states that his immunity motion will be based substantially on the Supreme Court's decision in *Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), a case decided on a narrow 5–4 margin. The plaintiff in that case, a former employee of the Department of the Air Force, had alleged that then-President Nixon abolished his position in retaliation for his testimony before a Congressional Committee. The District Court rejected President Nixon's claim of immunity, and the Court of Appeals dismissed his collateral appeal. The Supreme Court granted certiorari to decide the "important issue" of Presidential immunity. 457 U.S. 731, 741, 102 S.Ct. 2690, 2696. Referring to the plaintiff's claim as "this merely private suit for damages," *id.* at 754, 102 S.Ct. at 2703, the Court held that "[i]n view of the special nature of the President's constitutional office and functions, we think it appropriate to recognize absolute Presidential immunity from damages liability for acts within the 'outer perimeter' of his official responsibility." *Id.* at 756, 102 S.Ct. at 2704. In so holding, the Court identified immunity as "a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history." *Id.* at 749, 102 S.Ct. at 2701.

■ *Fitzgerald* involved official actions by a sitting President while the allegations here relate to conduct that purportedly occurred prior to President Clinton's assumption of office. The President acknowledges this distinction and states that his motion will not assert absolute immunity such as was afforded in *Fitzgerald,* but will recognize the plaintiff's right to reinstate the lawsuit after he leaves office. In asserting such a claim of immunity, the President will seek entitlement to a fundamental protection from suit previously unrecognized in any court. This claim may or may not succeed. Nevertheless, because of the "singular importance of the President's duties," *Fitzgerald,* 457 U.S. at 751, 102 S.Ct. at 2702, and because suits for civil damages "frequently could distract a President from his public duties, to the detri-

---

**2.** Plaintiff also asserts conspiracy and defamation claims against separate defendant Ferguson.

ment of not only the President and his office but also the Nation that the Presidency was designed to serve," *id.* at 753, 102 S.Ct. at 2703, the Court concludes that the issue of Presidential immunity deserves threshold consideration, prior to the filing of any other motions or pleadings.

█ In allowing the President to first assert the issue of immunity, the Court is permitting a procedure that is entirely consistent with the principles underlying absolute immunity. The "essence of absolute immunity is its possessor's entitlement not to have to answer for his [alleged] conduct in a civil damages action." *Mitchell v. Forsyth,* 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d· 411 (1985) (citing *Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690). "The entitlement is an *immunity from suit* rather than a mere defense to liability," and "it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 526, 105 S.Ct. at 2816 (emphasis in original). *See also Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) (noting that one of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending an extended lawsuit); *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.,* —— U.S. ——, ——, 113 S.Ct. 684, 687, 121 L.Ed.2d 605 (1993) (same). Because the entitlement is an immunity from suit, the Supreme Court has stressed that immunity questions should be resolved at the earliest possible stage in litigation. *Hunter v. Bryant,* 502 U.S. 224, ——, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

█ Moreover, the immunity that will be asserted in this case is of a unique character and does not require an analysis of the allegations of the complaint. The Court thus has no need for dispositive motions at this time. Were the President asserting a de-

fense of qualified immunity, the Court might well agree with the plaintiff that the substantive allegations of her complaint must be addressed. In such cases, courts are required to determine whether the alleged actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). To decide whether an official is protected by qualified immunity, a court must determine whether the official's action was objectively legally reasonable in the light of the legal rules that were clearly established at the time the action occurred. *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987). This inquiry involves a two-step process. First, the court must determine as a threshold matter whether the plaintiff has alleged a violation of a constitutional right. *Munz v. Michael,* 28 F.3d 795, 799–800 (8th Cir.1994) (citing *Beck v. Schwartz,* 992 F.2d 870, 871 (8th Cir.1993) (per curiam)). *See also Siegert,* 500 U.S. at 232, 111 S.Ct. at 1793. Second, the court must determine whether that constitutional right was clearly established at the time that the officials acted. *Munz,* 28 F.3d at 799–800 (citing *Cole v. Bone,* 993 F.2d 1328, 1332 (8th Cir.1993)).

█ The immunity that will be asserted by the President, however, is premised on his status as President and does not require the Court to review the legal sufficiency of the complaint. Indeed, the allegations of the complaint are irrelevant. This Court "need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need determine is a question of law." *Forsyth,* 472 U.S. at 528, 105 S.Ct. at 2827.[3]

Nevertheless, plaintiff argues that the Federal Rules of Civil Procedure require ev-

---

**3.** It is true that for some officials, the question of absolute immunity will depend upon the particular function the official is performing. Such an inquiry involves application of a " 'functional approach,' which looks to 'the nature of the function performed, not the identity of the actor who performed it.' " *Buckley v. Fitzsimmons,* —— U.S. ——, ——, 113 S.Ct. 2606, 2613, 125

L.Ed.2d 209 (1993) (citations omitted). In such cases, it may be necessary to examine the substantive allegations of the complaint. In the case at bar, however, the immunity that will be asserted by the President is premised on his status as President and does not require application of the "functional approach."

ery defendant, including the President of the United States, to either answer a complaint or file a single dispositive motion raising all available grounds for dismissal, including absolute immunity. Certainly, that is one way to handle a case, but it is not the only way it can be done. Plaintiff asserts, however, that the briefing schedule sought by the President is "nothing less than a categorical suspension of the Federal Rules of Civil Procedure." To the contrary, Rule 12 specifically allows for successive motions to dismiss for failure to state a claim. *Sharma v. Skaarup Ship Management Corp.*, 699 F.Supp. 440, 444 (S.D.N.Y.1988), *aff'd*, 916 F.2d 820 (2nd Cir. 1990), *cert. denied*, 499 U.S. 907, 111 S.Ct. 1109, 113 L.Ed.2d 218 (1991). "Although defenses of lack of jurisdiction over the person, improper venue and insufficiency of process are waived if not raised in a party's first responsive pleading, 'A defense of failure to state a claim upon which relief can be granted ... may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.'" *Id.* (citing Fed.R.Civ.P. 12(h)). *See also* 2A Moore's Federal Practice ¶ 12.07[3] at 12–102 (2d ed. 1994) (affirmative defenses not enumerated in Rule 12(b) may be made by motion under Rule 12(b)(6)); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1361 at 447–48 (1990) (Rule 12(b)(6) motions are exempted by Rule 12(g) from the consolidation requirement). The briefing schedule sought by the President is in conformity with the Federal Rules of Civil Procedure and does not afford him privileges unavailable to other defendants.[4]

To be sure, the plaintiff's interest in seeking prompt relief for the alleged violation of her rights is certainly legitimate and not to be minimized. The Court, however, finds that plaintiff's concern that the briefing schedule proposed by the President will entail undue delay is unfounded. Should the Court deny the President's claim of immunity, such order would be immediately appealable. *Forsyth*, 472 U.S. at 525, 105 S.Ct. at 2814–15; *Puerto Rico Aqueduct & Sewer Authority*, —— U.S. at ——, 113 S.Ct. at 687. This would be so regardless of the Court's ruling on any other Rule 12(b) motions.

Furthermore, it must be recognized that the relief plaintiff seeks is of a purely personal nature, the delay of which will affect but a single individual who waited two days short of three years in which to file her lawsuit. The President's claim to immunity from suits for civil damages, on the other hand, is equally legitimate and may affect "not only the President and his office but also the Nation that the Presidency was designed to serve." *Fitzgerald*, 457 U.S. at 753, 102 S.Ct. at 2703.[5] Indeed, the amenability of a sitting President to suits for civil damages raises significant and important constitutional issues, the resolution of which will directly impact the institution of the Presidency. That being so, and because the President's constitutional responsibilities and status require this Court to exercise judicial deference and restraint, *Fitzgerald*, 457 U.S. at 753, 102 S.Ct. at 2703, the Court finds that the President should be allowed to defer the filing of any other motions or pleadings until such time as the issue of immunity has been resolved by this Court.

### III.

For the foregoing reasons, the Court will allow the President to file a motion to dismiss on the grounds of Presidential immunity on or before August 10, 1994, and to defer

---

4. Plaintiff also argues that the cases cited by the President require that every defendant either answer a complaint or file a single dispositive motion raising all available grounds for dismissal. However, the courts in those cases did not specifically require the concurrent filing of all motions but simply addressed the particular procedure in which the litigants before them happened to proceed. Those cases do not stand for the proposition that the briefing schedule proposed by the President is inappropriate or otherwise precluded.

5. As was previously noted, the Supreme Court has expressed concern that suits for civil damages could distract a President from his public duties. *Fitzgerald*, 457 U.S. at 753, 102 S.Ct. at 2703. In this regard, the Court noted that there is a lesser public interest in actions for civil damages than, for example, in criminal prosecutions. *Id.* at 754 n. 37, 102 S.Ct. at 2703 n. 37.

and preserve the filing of any other motions or pleadings that may or must be filed under the Federal Rules of Civil Procedure until such time as the issue of Presidential immunity has been resolved by this Court.[6]

IT IS SO ORDERED.

6. Nothing in this Order should be construed as indicating how the Court will rule on the President's soon-to-be-filed immunity motion. This Order only addresses the procedural issue, not the substantive questions relating to immunity.