John P. Cohalan, Jr., J.
This is an action to compel the determination of a claim to some 17 acres of improved real *35 property in Suffolk County, pursuant to article 15 of the Beal Property Actions and Proceedings Law.
In brief, the gravamen of the action is that plaintiff is the surviving tenant by the entirety of the subject property and is thus the sole owner. In tracing her chain of title, she alleges that her name was forged to a deed which ran from her late husband and purportedly from herself to Tomaura Improvement Corp. (hereafter “ corporation ”) a wholly owned corporation of her husband’s. The deed bears an acknowledgement date as to her of May 31, 1950, and was thereafter recorded in the County Clerk’s office on July 14, 1950.
Baymond C. Leering, named as an executor, qualified as such, but is deceased. The other executors, Manufacturers Hanover Trust Company (hereafter “mhtc”), and John J. McGrinty (hereafter “McGrinty”) have served and filed separate answers. In his lifetime Leering joined in MHTC’s answer. To a point the answers are similar in that they both interposed a general denial and pleaded affirmatively the defenses of laches, ratification and estoppel. Additionally, mhtc raised the affirmative defense of res judicata. It also asserted two counterclaims, the first to have it determined that the executors own the subject property; and the second, that if they do not, then they and the corporation should be reimbursed for any outlays made by them or either of them for taxes, insurance, maintenance and general upkeep of the property, both before and after the death of Thomas F. Kearns (hereafter “Kearns”), which occurred on July 20,1959.
A separate defense of Statute of Limitations interposed by McGrinty in his answer was withdrawn at the trial.
The reply consists of a general denial and a demand for the relief set forth in the complaint.
The Kearnses took title as husband and wife in 1943, some 10 years after their marriage. Soon after the purchase they set up the property as a Summer residence for themselves and for their then two small children.
Within a year or so they named the acquisition Tomaura by the apocopation of the names of their son Thomas, or Tom, and their daughter Maureen, resulting in Tomaura (Tom-Maura). In the latter part of August, 1945 Kearns formed a corporation for the purpose of dealing in the purchase and sale of real estate. He named it Tomaura Improvement Corp., an unfortunate and confusing choice as later events were to prove, for to his wife Tomaura was most often associated with the home and not the corporation.
*36 Their married life was a stormy one, punctuated by at least two formal separations which saw the light of day in the courtroom. In the first of these in 1945, Kearns alleged in his answer that plaintiff had orally agreed when they took' title by the entirety that she would convey her interest to him upon request.
As to this facet of the case, plaintiff testified that had she been asked she probably would have complied Avith his request, but that she was never asked. Defendants produced no evidence on this point to gainsay her. The possible consequences of the feminine prerogative for changing one’s mind are thus not before the court.
The law on the question of tenancy by the entirety is to the effect that even if the husband parts Avith all the consideration, his wife is just as much entitled to an interest in the' property as he. Thus, in Hosford v. Hosford (273 App. Div. 659, 661) in the Fourth Department, the court said: ‘ ‘ The fact that the husband provided the purchase price in the first instance does not alter that situation. When title was taken in the names of the husband and wife so as to create a tenancy by the entirety the law will presume a gift upon the husband’s part based upon mutual love and affection (Shapiro v. Shapiro, 208 App. Div. 325; Yax v. Yax, 125 Misc. 851, affd. 217 App. Div. 714.) Moneys expended during the existence of the marriage by the husband for mortgage principal, and interest, and for improvements on the marital dwelling house, fall in the same category.”
The picture as presented by the plaintiff, of Kearns himself, is that of a domineering personality whose wishes no one dared to thwart. Again, no one came forward to paint a brighter portrait, although Avitnesses Avere produced by the defendants Avho know the deceased well and Avho worked for and Avith him during his lifetime.
In the year 1946 Kearns executed and recorded a deed to the subject property to his corporation without bothering to obtain his Avife’s signature, and presumably Avithout asking her to join in the coiweyance. When she learned of it, she thought, and so testified, that his corporation OAvned a one-half interest in the subject property and she the other half. The significance and the nuances of real property holdings by the entirety Avere matters about Avhich she seemed blissfully ignorant. However, McGfinty, the scrivener of the deed, was Avell aAvare of the legal effect and testified that the conveyance Avas not Avorth the paper it Avas Avritten on unless Mrs. Kearns predeceased her husband.
As to the 1950 deed, plaintiff said she neither signed' it nor authorized anyone else to sign it, nor ratified the action of Avhom *37 soever signed it after the deed was done. In short, she alleged a forgery.
In support of her position she produced an examiner of questioned documents (handwriting expert). To aid him in arriving at an opinion he was furnished with approximately 130 specimen signatures of the plaintiff, consisting of 122 bank checks drawn by her over a period of 17 years, some before and most after 1950, plus her signature on legal documents, plus three specimens signed in the presence of and at the request of the court, all pursuant to CPLR 4536.
As his firm opinion he said that she did not sign the deed in question. The court credits his supporting testimony on the bases of his professional skill, on its own inspection of the speciments and the questioned document and because no attempt was made to disprove it beyond rather perfunctory cross-examinations.
Kearns lived for nine years after the deed was recorded, during which time either he or the corporation paid the taxes and maintenance expenses on the property. Not once did he place Tomaura on the market for sale, nor so far as is known did he make any effort to sell it privately. The family spent each succeeding Summer on the grounds. On the surface everything connected with Tomaura was conducted after May 31, 1950 just as it had been before.
The person whose name appears on the deed both as witness and as notary public did not say that plaintiff merely appeared before him and acknowledged a signature on the deed as hers, but that she actually signed and acknowledged it in his presence. Faced squarely with the question of credibility the court to a moral certainty believes the plaintiff in preference to the notary. (Albany County Sav. Bank v. McCarty, 149 N. Y. 71, 80.) The latter was an employee of another corporation controlled almost entirely by Kearns.
‘ ‘ The fact that a false and fabricated writing of this character is deposited in a public office for record, and is actually recorded, can add nothing to its legal effieaev.” (Marden v. Dorthy, 160 N. Y. 39, 56.)
The law tells us that “ No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime ” (Riggs v. Palmer, 115 N. Y. 506, 511). See, also, New York Mut. Life Ins. Co. v. Armstrong (117 U. S. 591). The cited cases deal with malfeasance by the living, but it becomes no less reprehensible if perpetrated by one now dead. Under ordinary circumstances one would, for decency’s sake, *38 observe the doctrine de mortuis nil nisi bonum. Here, however, since the testimony of plaintiff is given credence, the court is impelled to the conclusion that Kearns, or some one under his control other than his wife, affixed the offending ‘ ‘ signature ’
Both surviving executors fall back upon the defense of ratification and estoppel and point to a deed plaintiff signed at McGrinty’s request. It was dated April 3, 1961, signed by her on May 5 of the same year and recorded a few days thereafter. The grantor in the deed is the corporation and the grantees the executors. She signed in the capacity of president of the corporation ( a position she acquired after her husband’s death) and acknowledged her signature to the deed along with her signature to several other documents, before a woman notary public. The latter was employed by her late husband and testified that plaintiff apparently did not read, nor did she have time to read, any of the items to which she affixed her signature. Ordinarily a court would brush aside such a plea as a lame excuse for carelessness (Amend v. Hurley, 293 N. Y. 587, 595; Pimpinello v. Swift & Co., 253 N. Y. 159); but here again it illustrates her faith in and reliance upon McG-inty as her adviser. The deed and other documents signed by her as part of the dissolution proceedings of the corporation, as the result of a meeting she did not attend and of a waiver of notice signed five weeks after the meeting was finally purportedly held. The waiver was one of the documents signed before the woman notary public.
In New York Jurisprudence (vol. 2, Agency, § 161, p. 308) appears the statement that: ‘ ‘ There is some contrariety of opinion as to whether a forgery is subject to ratification. Most well-considered cases hold that since the forgery of an instrument involves a crime and public wrong, besides being opposed to public policy, it cannot be ratified so as to bind the person whose name has been forged, in the absence of an estoppel in pais, without a new consideration for the promise.”
Estoppel in pais is defined in Oswego Falls Corp. v. City of Fulton (148 Misc. 170, 177): “An equitable estoppel in pais has been defined as ‘ the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both in law and in equity, from asserting rights which might have otherwise existed, either of property, or of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his condition for the worse, and who, on his part, acquires some corresponding right, either of property or contract, or of remedy. ’ ”
*39 Whether or not the indivdual executor was carrying water on both shoulders, there is little doubt that plaintiff relied upon him and acted on his advice to the extent of executing documents that he requested her to sign.
McG-inty at least could not in complete good faith have relied upon her conduct for he knew or strongly suspected that she had never executed the 1950 deed and obviously she acquired no “corresponding right ” by signing the conveyance. In any case, even this is consistent with her testimony that she thought the corporation had a one-half interest in Tomaura (the residence) and that she was merely obliging the executors by making it easier for them to sell the decedent’s interest as well as her own. Added to this is the circumstance that the forged deed gave nothing in the way of title to the corporation so that her signature as the corporation president superimposed nothing on top of nothing.
On the question of putting her on notice that Tomaura was owned by the corporation, the executors refer to a written statement made by the deceased in the second separation action. His affidavit sworn to February 6, 1953 stated in part that ‘ ‘ 9. The home at Shinnecoek Hills is owned by a domestic corporation called the Tomaura Improvement Corp, ”.
If he had wanted to claim absolute ownership of the real property in the corporation he could easily have continued with such a clause as ‘ which was conveyed to the corporation by deed of my wife and myself acknowledged May 31, 1950 and duly recorded, etc.” That would have been a challenge she could not ignore, but this he did not do and again it is consistent with her mistaken belief that she owned a one-half interest and the corporation the other half in Tomaura.
mhtc asserts that the corporation went to considerable expense in maintaining Tomaura, with particular reference to the 1946 deed running from Kearns alone -to the corporation. It cites Lawriw v. City of Rochester (14 A D 2d 13, 15), wherein it is noted that ‘ When one tenant by the entirety conveys his interest in the property, the characteristics of the tenancy, including the right of the survivor to the whole fee, remains unimpaired. The grantee becomes a tenant in common with the spouse of the grantor, so far as the right of possession and the right to share in rents and profits are concerned, but the title is still deemed to be held by the entirety.” (See, also, Hiles v. Fisher, 144 N. Y. 306, 316.)
mhtc argues that as a corollary to the enjoyment of the rents and profits, the burden of the expense of maintenance falls upon the tenants equally.
*40 To all of this argument the court’s reaction is that the corporation was Kearns and Kearns was the corporation, for when we pierce the veil of the corporate entity we find Kearns behind it as the Pooh Bah of the enterprise. As a husband it was his duty to furnish his wife with necessaries according to their station in life, a roof over her head falling into that category. Were it otherwise, any husband similarly situated could evade at least half his obligations by pursuing the same course. Parenthetically, it is to be noted that if Kearns thought the 1946 deed had efficacy, there was no need for him to join as grantor in the 1950 questioned deed.
For ratification “To be effective, the principal must intend to ratify the unauthorized act, he must have the power of ratifying the act done, he must ratify the transaction in its entirety, he must have knowledge of all the material facts surrounding the transaction to be ratified, the person acting in an unauthorized manner must have purported to be acting in the matter on behalf of the principal, and the act itself must be capable of ratification. ” (2 N. Y. Jur., Agency, § 164, p. 310.)
For plaintiff to have fulfilled these requirements, it would mean that after her husband’s death she would be expected to put her stamp of approval on a forgery which would take away her house, for the benefit of the executors and of a contract vendee who is not even a party to the action. For, as noted in Mardan Constr. Corp. v. Rogers Auto Sales Corp (13 Misc 2d 196, 198) “A ratification presupposes an unauthorized act on behalf of someone else, which that person later authorizes or ratifies.”
From ratification we pass to estoppel. By ratification a party is bound because he intends to be and is willing to be. It is thus confirmation of past conduct, whereas estoppel is the inducement to another to act to his prejudice, by some act or omission of the estopper.
Who here acted to whose prejudice Í Throughout, the individual executor certainly knew that Mrs. Kearns consistently denied signing the questioned deed; and that knowledge was imparted by him to mhtc as coexecutor, sometime before January 30, 1963 according to his testimony.
The contract vendee is not prejudiced in law, inasmuch as he can recoup his deposit, presumably with interest for the period it was held.
The defense of res judicata asserted by mhtc is predicated on a judgment of separation dated February 1, 1954 and entered March 24 of the same year containing a decretal clause which reads: “ Ordered, adjudged and decreed, that the plaintiff be *41 and she hereby is granted the use and occupancy of the residence at Shinnecock Hills in Hampton Bays, Town of Southampton, Long Island, New York, including not more than two acres of the adjacent grounds and beach rights, free of any liability for rent or use and occupation, real estate taxes, fire and liability insurance premiums and mortgage amortization and interest ’ ’.
By no stretch of the imagination can it be said that the judgment made any adjudication as to the title to the subject real property.
As to laches, the authorities hold that it is not mere delay, but delay that works disadvantage or injury. In Marcus v. Village of Mamaroneck (283 N. Y. 330, 332) Futch, J., noted: “ The defense of laches is based upon the principle that plaintiffs have delayed to the prejudice of defendants.”
The defendants here are the alter ego of Kearns. No laches had attached before his death on July 20, 1959, and surely after and well before January 30, 1963, plaintiff, buttressed by her daughter, declared in no uncertain terms that she was not the signatory of the questioned deed. McGinty lmew it and only belatedly told his coexecutor, mhtc. Any fault in such a circumstance is thus laid at the feet of the executors.
The foregoing remarks obviate the necessity of comment on the first counterclaim of mhtc and bring us to the second.
Continuously and steadfastly plaintiff has declared that her purported signature on the 1950 deed is a forgery. The court credits her testimony, and rejects the assorted affirmative defenses and holds that she is the surviving tenant by the entirety of Tomaura. That being so, she became such surviving tenant at the moment of her husband’s death on July 20, 1959.
As her own property it is hers also to maintain out of her own resources. If, as claimed by the executors, someone other than herself paid the various expenses through a mistake of law or of fact, has she not been unjustly enriched by such a windfall? We think so.
Tomaura is hers to sell or to keep. Pecuniary provision has been made for her in Kearns’ will and so far as has been shown no attempt has been made, save the instant action, to contest the will or any of its clauses.
If, as before noted, the corporation is Kearns and Kearns is the corporation, then the estate of Kearns should not have to bear the brunt of maintaining Tomaura; and for such outlay of expense either has advanced, reimbursement should be made.
Belatedly an application was made on behalf of the corporation to open its default in pleading and to interpose an answer. In view of the court’s disposition of the counterclaim herein, the motion is granted. Unless good cause to the contrary is *42 shown by plaintiff she will be deemed to reply by way of a general denial of all the material allegations contained in the counterclaim raised in the proposed answer.
Upon the evidence submitted, the court holds that Kearns was the sole and only stockholder of the corporation at the time of his demise and that neither plaintiff nor her children, or either or any of them, had any interest as such in the corporation at that time or at any other time prior to his death.
Judgment is directed for the plaintiff in accordance with her complaint and she is adjudged to be the surviving tenant by the entirety of Tomaura ’ ’, the real property at Shinneoock Hills.
Judgment is also directed for the defendants, mhto and the corporation on their counterclaims to the extent of the money advances made after July 20, 1959, the date of death of Kearns. The court computes the amount to be $14,200 over all, with the. division to be made by and between the said defendants by stipulation or otherwise. Interest on the amount indicated is set at 4%.
Pursuant to the demand in plaintiff’s ad damnum clause in her complaint for this and other relief, the County Clerk upon service upon him of the original or a certified copy of a judgment to be entered herein with notice of entry, is directed to cancel the deeds recorded respectively in Liber 3100 of conveyances, page 315 on July 14, 1950 and in Liber 4984 of conveyances, page 28 on May 9,1961, by making appropriate notations to that effect in the books of record.