OPINION OF THE COURT
Gloria Goldstein, J.
This case, submitted to the court upon an agreed statement of facts, presents an issue of novel impression. Is a buyer entering into a wholly executory contract to purchase real property, entitled to the remedy of specific performance when the check, issued for the requisite down payment, is returned for “insufficient funds,” and the seller has thereupon declared the contract void? There do not appear to be any reported cases precisely in point in any jurisdiction.
The parties stipulated that the case be decided upon the following statement of facts: “On May 10, 1979 the plaintiff-buyer and the defendant-seller entered into a real estate contract dated May 10,1979 (Exhibit A). The plaintiff executed the deposit check the same day in the sum of $3,750.00 which check was deposited for collection by the seller’s attorneys, the escrow agents. When the check reached the buyer’s bank, the buyer did not have sufficient funds on deposit and the buyer’s bank returned the deposit *1028 check for insufficient funds. On May 17, 1979 the seller’s attorneys wrote to the plaintiff and advised her that in view of the fact that her check was returned for insufficient funds, that the seller defendant had taken the position that the contract was void (Exhibit B). The buyer’s attorney wrote to the seller’s attorney on May 21, 1979 and asked them to redeposit the check (Exhibit C). The buyer’s attorney notified the seller’s attorney that if the check was redeposited the check would clear. The seller’s attorney refused to redeposit the plaintiff’s check.”
The real estate contract herein involved is the standard New York Board of Title Underwriters form, numbered 8041, and provides, in pertinent part, as follows: “The purchase price is $75,000 payable as follows: On the signing of this contract, by check subject to collection: (Which deposit shall be held in escrow by seller’s attorney until the closing) $3,750.00”.
The letter from the seller’s attorney to the buyer’s attorney noted that the buyer’s check was returned unpaid with the notation “insufficient funds.” The attorney for the seller further stated: “In view of the fact that the agreement was based upon a deposit of $3750.00 by check subject to collection and such deposit was not made pursuant to the terms of the contract, our client, Joseph R. Aguayo, has taken the position that the contract is void ‘ab initio’ and therefore null and void.”
The letter from the buyer’s attorney to the seller’s attorney stated that the “check failed to clear due to an error.” “Accordingly, you are hereby directed to redeposit said check; my client will reimburse you for any costs incurred as a result of the check not clearing. It is my client’s position that this contract is in full force and effect, and we are proceeding accordingly. Therefore, unless I receive a retraction of your letter, my client has advised me to proceed with the necessary legal action to protect her position.”
Based upon the foregoing “Agreed Statement,” and the accompanying exhibits, this court finds that the plaintiff buyer (hereinafter buyer) is not entitled to specific performance. The dishonor of the buyer’s check resulted in a *1029 failure of payment of the contractually required deposit. This nonpayment resulted in failure of an essential condition, a failure of consideration, and a material breach of the contract, thus excusing the performance of the defendant seller (hereinafter seller) and entitling the seller to terminate the agreement between the parties.
At the outset, it is essential to observe the distinction between wholly executory and partly executed real estate contracts. Under partly executed contracts, e.g., installment land contracts, the buyer is given immediate possession and enjoyment of the land, for which he pays the seller in installments. Such contracts are, in substance, mortgages and are treated accordingly (see 5 Williston, Contracts [3d ed], § 792). The termination of a partly executed contract would result in an extreme forfeiture, particularly if the buyer has made substantial improvements and/or payments. On the other hand, wholly executory contracts remain to be performed and do not generally result in any harsh forfeiture or hardship upon termination. Rather do they generally result in the loss of an anticipated bargain (Simpson & Duesenberg, 7 Encyclopedia NY Law, Contracts, § 1322). Because equity abhors a forfeiture, it is significant that the subject contract is wholly executory and no unreasonable forfeiture is involved.
This represents a case of nonpayment rather than late payment, as the buyer has neither made nor tendered the required down payment. It is well settled that a check is merely a conditional payment which fails upon dishonor (Mansion Carpets v Marinoff, 24 AD2d 947; 4 Warren’s Weed NY Real Property, Payment, § 2.04; see, also, Uniform Commercial Code, § 2-511, which provides that “payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment”). This is true even in the absence of the phrase “subject to collection,” which is invariably inserted by a seller to underscore the conditional effect of payment by check. Surely, this phrase cannot be interpreted to either enlarge the seller’s responsibility to collect or extend the buyer’s time to pay. It simply means that payment is conditional or incomplete until the actual collection of the proceeds. The tender of a check without funds in the bank is not a valid *1030 payment (New York Utility Co. v Williamsburg Steam Laundry Co., 187 App Div 110).
The dishonored check was not a valid payment, and the subsequent direction to redeposit was not a valid tender. “Tender is an offer to perform a condition or obligation coupled with the present ability of immediate performance, so that were it not for the refusal of cooperation by the party to whom tender is made, the condition or obligation would be immediately satisfied” (15 Williston, Contracts [3d ed], § 1808).
The buyer’s obligation would not have been more “immediately satisfied” upon redeposit of the check than it was upon the original deposit. It is quite possible for a check to be dishonored twice — or more. The buyer defaulted when her check was dishonored for insufficient funds. Simply directing the seller to redeposit the check was, at best, an inadequate attempt to cure the default. This “direction” did not constitute a valid tender, and was insufficient to discharge the buyer’s obligation (cf. Jamaica Sav. Bank v Sutton, 42 AD2d 856). The declaration by the attorneys for the seller that they considered the contract “void” was no excuse for failing to make a valid tender. Tender may be excused when, before one is required to act, the other party makes clear that he will not perform (Cochran v Taylor, 273 NY 172). Here, however, the buyer was already in default and greater diligence was required. Moreover, it is evident that the buyer was not inhibited by the seller’s letter since, in response thereto, the buyer’s attorney boldly “directed” the seller to redeposit the check and declared his position that the contract was in “full force and effect.”
A down payment under a contract for the sale of real property provides security to a seller who is thereby “tying up” his property. It is much more than a mere installment. The down payment generally assures the seller that the buyer with whom he is dealing is a legitimate purchaser and, perhaps more importantly, it represents a source of reparations in the event of a breach. While a buyer can look to the property itself for security, as evidenced by the present action, a seller must generally rely on the down payment. It is often the seller’s only practical recourse. *1031 Although he may also sue a defaulting buyer, in light of the difficulty and risk that litigation entails, this alternative is a rather poor substitute for the down payment, particularly when there is a danger that the buyer may be insolvent. Customarily, a seller of real estate will not bind himself by contract without first receiving the down payment. It is an accepted, time-honored and essential element of the common real estate transaction.
The making of the down payment in full has been held to be a condition precedent to any obligation on the part of the seller to be bound by a promise to convey (Renol Holding Corp. v Lankenau, 116 NYS2d 861; see, also, State ex rel. Bond v Register of Conveyances, 162 La 362). A condition precedent has been defined as: “a fact or event which the parties intend must exist or take place before there is a right to performance. A condition is distinguished from a promise in that it creates no right or duty in and of itself but is merely a limiting or modifying factor. If the condition is not fulfilled, the right to enforce the contract does not come into existence. Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract” (5 Williston, Contracts [3d ed], § 663, pp 126-127).
The contract expressly specified that the down payment was to be paid “on the signing of the contract.” The seller did not bargain for the buyer’s promise to pay the down payment, but rather for payment itself. Doubtless, the seller would not have executed the contract without receiving what he believed to be the down payment. Accordingly, the buyer’s nonpayment defeats her right to enforce the contract. Moreover, it constitutes a material “failure of consideration” giving the seller the right to rescind the contract. (6 Williston, Contracts [3d ed], §814.) “A material breach leaves less than substantial performance, thus resulting in failure of the constructive condition which discharges the promisor. Also it is often said that a material breach results in failure of the consideration for the defendant’s promise, and this is regarded as a defense *1032 sufficient to defeat liability” (Simpson & Duesenberg, 7 Encyclopedia NY Law, Contracts, § 1418).
Whether the down payment provision is considered a “condition” or a “term,” the end result remains the same — the buyer is not entitled to specific performance, A material breach of a real estate contract excuses the other party’s performance and gives rise to a right of rescission (Grace v Nappa, 46 NY2d 560). In light of the importance of the down payment and the utterly insufficient performance by the buyer, the failure to make the down payment constituted a material breach of the contract, entitling the seller to rescind and thereby defeating the buyer’s right to specifically enforce the said agreement.
The seller interposed counterclaims for attorney’s fees and punitive damages. Attorney’s fees are not recoverable in the absence of a specific contractual or statutory provision (20 Am Jur 2d, Costs, § 72). There existing no such provision applicable to this case, the defendant’s counterclaim for attorney’s fees is dismissed.
Punitive damages cannot be pleaded in a separate cause of action, but rather must be claimed in an ad damnum clause (M.S.R. Assoc. v Consolidated Mut. Ins. Co., 58 AD2d 858). Moreover, the general rule in contract actions is that punitive damages may not be recovered (14 NY Jur, Damages, § 183). The present case does not warrant a departure from this rule. Accordingly, the defendant’s counterclaim for punitive damages is also dismissed.