34 F.3d 1310
 74 A.F.T.R.2d 94-6219
 HOOSIER ENERGY RURAL ELECTRIC COOPERATIVE, INCORPORATED,
Plaintiff-Appellant,
v.
AMOCO TAX LEASING IV CORPORATION and Amoco Corporation,
formerly known as Standard Oil Company, Indiana,
Defendants-Appellees.
 No. 93-3340.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 29, 1994.
Decided Sept. 9, 1994.
Rehearing and Suggestion for Rehearing En Banc Denied Oct. 17, 1994.*
 
 Terry M. Grimm (argued), Kimball R. Anderson, Joseph John Zaknoen, Winston & Strawn, Chicago, IL, J. David Huber, Zoercher, Huber & McEntarfer, Tell City, IN, Harold Harrell, Harrell, Clendenning & Coyne, Bloomington, IN, for plaintiff-appellant.
 William P. Wooden (argued), Mary L. Titsworth, Wooden, McLaughlin & Sterner, Indianapolis, IN, Daniel Pinkert, Amoco Corp., Chicago, IL, for defendants-appellees.
 Before MANION and ROVNER, Circuit Judges, and PLUNKETT, District Judge.**
 MANION, Circuit Judge.
 
 
 1
 Hoosier Energy Rural Electric Cooperative, Inc. ("Hoosier Energy") brought a state court action against Amoco Tax Leasing IV Corporation ("Amoco Tax") asserting claims for breach of contract and unjust enrichment and against Amoco Corporation asserting an unjust enrichment claim. Amoco Tax filed a notice of removal to federal court. Hoosier Energy opposed removal, claiming that no diversity jurisdiction existed because Amoco Corporation and Hoosier Energy were both residents of Indiana. The district court held that Hoosier Energy had fraudulently joined Amoco Corporation in its action against Amoco Tax and, therefore, dismissed Amoco Corporation. The district court then exercised jurisdiction over Hoosier Energy's breach of contract and unjust enrichment claims against Amoco Tax and held that Hoosier Energy's complaint failed to state a claim on either basis. Hoosier Energy amended its complaint, again attempting to state claims for breach of contract and unjust enrichment. The district court also dismissed Hoosier Energy's amended complaint for failure to state a claim. Hoosier Energy appeals the district court's holding that Amoco Corporation was fraudulently joined and its holding that its amended complaint failed to state a claim against Amoco Tax for breach of contract. We affirm.
 
 I. Background
 
 2
 On August 13, 1981, the United States Congress enacted the Economic Recovery Tax Act of 1981, commonly known as "ERTA." ERTA allowed the owner of designated property to transfer investment tax credits and cost recovery deductions (or more simply depreciation) to a qualified corporation, provided that the transaction complied with the "safe harbor" leasing rules set forth in section 168(f) of the Internal Revenue Code. As a result of ERTA, an industry developed in which corporations would sell their excess tax credits and deductions to other corporations who could take full advantage of these credits and deductions.
 
 
 3
 Hoosier Energy and Amoco Tax entered into such an agreement on February 17, 1982. Under the agreement, Hoosier Energy sold certain electrical generating and transmission property to Amoco Tax and then leased back that same property. This sale-leaseback transaction complied with Section 168(f) and thus enabled Amoco Tax's parent company, Amoco Corporation, to claim deductions on its tax return for the depreciation on the electrical generating and transmission property.
 
 
 4
 At the time that Amoco Tax and Hoosier Energy entered into the sale-leaseback agreement, it was unclear how much depreciation Amoco Corporation would be able to claim because it was unclear whether the Internal Revenue Service ("IRS") would treat the electrical generating and transmission property as public utility property depreciable over fifteen years or as property depreciable over five years. If the IRS allowed depreciation over five years, as opposed to fifteen years, the deductions would be much more valuable to Amoco Corporation because of the time value of money.
 
 
 5
 Because of the uncertainty of the economic value of the tax deductions, the sale-leaseback agreement provided:
 
 
 6
 Prepayment of Section 168 Loans. Notwithstanding the provisions of paragraphs (b) and (f) of this Section 3, if, prior to June 30, 1983, Regulations, proposed treasury regulations or a revenue ruling of the Internal Revenue Service shall be published with respect to the definition of "public utility property", within the meaning of section 167(1)(3)(A) of the Code, with the effect that, in the opinion of Messrs. Dewey, Ballantine, Bushby, Palmer & Wood or other outside tax counsel to Amoco (the reasonable fees and disbursements of which shall be paid by Hoosier), such definition shall be, or, in consequence of proposed Regulations, will be amended to conform in substance to Sec. 1.46-3(g)(2) of the Regulations, then, if (i) Amoco shall then be able to make effective use, for Federal Tax Purposes, of the full incremental Recovery Deductions attributable to "5-year property" within the meaning of section 168(c)(2)(B) of the Code, and (ii) in the opinion of such counsel, such amended Regulations, proposed regulations or revenue ruling shall be applicable to either or both of the Units of Property and shall permit Amoco to claim Recovery Deductions in respect of such "5-year property", Amoco shall pay to Hoosier, within 10 days following the receipt of such opinion, amounts in immediately available funds, as [set forth below.]
 
 
 7
 Agreement p. 11, Sec. 3(c) (emphasis added).
 
 
 8
 On February 16, 1984 the IRS published a proposed treasury regulation which clarified that the electrical generating and transmission property was not public utility property subject to fifteen-year depreciation, but was property depreciable over five years. The IRS made this Regulation retroactive to property placed in service after December 31, 1980. Because of the retroactivity of this Regulation, Amoco Tax was able to depreciate the property it had bought from Hoosier Energy over five years instead of fifteen years. Based on Amoco Tax's ability to depreciate the property over five years, Hoosier Energy sought additional compensation from Amoco Tax estimated at between twenty-five and twenty-eight million dollars. In doing so, Hoosier Energy contended that the sale-leaseback agreement "obligated Amoco Tax to pay Hoosier Energy additional compensation if Amoco Tax ever depreciated the property over a five-year life." Amoco Tax disagreed, pointing to Section 3(c) of the sale-leaseback agreement which stated that Amoco Tax would pay Hoosier Energy additional funds only "if, prior to June 30, 1983, Regulations, proposed treasury regulations or a Revenue Ruling of the Internal Revenue Service shall be published" treating the property as five-year property. Amoco Tax maintained that since the proposed treasury regulation was not published until February 16, 1984 (after the June 30, 1983 deadline), no additional compensation was due Hoosier Energy under the sale-leaseback agreement.
 
 
 9
 After Amoco Tax refused to pay Hoosier Energy any additional compensation, Hoosier Energy filed suit in Indiana state court against Amoco Tax and Amoco Corporation. Hoosier Energy asserted claims against Amoco Tax for breach of contract and unjust enrichment and against Amoco Corporation for unjust enrichment. Amoco Tax filed a notice of removal to federal court. Hoosier Energy opposed removal claiming that no diversity jurisdiction existed because both it and Amoco Corporation were citizens of Indiana. The district court held that Hoosier Energy had fraudulently joined Amoco Corporation and accordingly dismissed Amoco Corporation, thereby creating complete diversity. Amoco Tax then moved to dismiss Hoosier Energy's complaint for failure to state a claim for breach of contract and unjust enrichment. The district court granted this motion. The district court then granted Hoosier Energy's motion to amend its complaint, but also dismissed this amended complaint for failure to state a claim.
 
 II. Analysis
 
 10
 Hoosier Energy appeals the district court's holding that Amoco Corporation was fraudulently joined in its suit against Amoco Tax. Hoosier Energy also appeals the district court's dismissal of its breach of contract claim against Amoco Tax as set forth in its amended complaint. Hoosier Energy does not appeal from the district court's dismissal of its unjust enrichment claim against Amoco Tax.
 
 A. Fraudulent Joinder
 
 11
 This court's diversity jurisdiction is limited. "For a case to be within the diversity jurisdiction of the federal courts, diversity of citizenship must be 'complete' meaning that no plaintiff may be a citizen of the same state as any defendant." Fidelity & Deposit Co. of Md. v. Sheboygan Falls, 713 F.2d 1261, 1264 (7th Cir.1983). Hoosier Energy is a cooperative incorporated in Indiana and has its principal place of business in Indiana. Amoco Tax is incorporated in Delaware and has its principal place of business in Illinois. Amoco Corporation is incorporated in Indiana with its principal place of business in Illinois. Despite the apparent lack of diversity jurisdiction (both Hoosier Energy and Amoco Corporation are Indiana citizens), Amoco Tax nonetheless filed a notice for removal to federal court, asserting that Amoco Corporation was fraudulently joined in that action and that without the presence of Amoco Corporation diversity of citizenship existed between the parties.
 
 
 12
 "Diversity jurisdiction cannot be destroyed by joinder of nondiverse parties if such joinder is fraudulent." Gottlieb v. Westin Hotel Co., 990 F.2d 323, 327 (7th Cir.1993). Thus, if joinder of Amoco Corporation was fraudulent, removal was proper. Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir.1992). "Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." Gottlieb, 990 F.2d at 327. Amoco Tax does not claim that there was "outright fraud" in Hoosier Energy's pleadings of jurisdictional facts. Rather, it maintains that there is no possibility that Hoosier Energy can state a cause of action against Amoco Corporation in Indiana state court. The district court agreed, as do we.
 
 
 13
 The sale-leaseback agreement which Hoosier Energy entered with Amoco Tax contained a non-recourse provision. This provision stated:
 
 
 14
 Non-Recourse Against Stockholders or Members; Indemnity. (1) No recourse shall be had for the payment of the Section 168 Loans, or for any other amount payable hereunder or for any claim based thereon or otherwise in respect thereof or based on or in respect to this Agreement, against, Amoco Leasing Corporation (Amoco's sole stockholder) or any other Affiliate of Amoco or any incorporator or any past, present or future subscriber to the capital stock, stockholder, officer or director of Amoco or of any Affiliate of Amoco or of any predecessor or any successor corporation under any rule of Law or by the enforcement of any assessment or penalty, or otherwise, it being expressly understood that all obligations of Amoco under this Agreement are solely corporate obligations and that all such liability of Amoco Leasing Corporation and any other Affiliate of Amoco and of the incorporators, subscribers, stockholders, officers and directors of Amoco or of any Affiliate of Amoco or of any such predecessor or successor corporation, is and is hereby agreed to be expressly waived and released as a condition of, and as consideration for, the execution of this Agreement and to that end Amoco's Affiliates (including Amoco Leasing Corporation) and such incorporators, subscribers, stockholders, officers and directors shall be considered included in the general indemnity provided in Section 8 hereof in each case as though references to the term Amoco in such Section referred severally instead to each of them.
 
 
 15
 Agreement Sec. 17(c).
 
 
 16
 This non-recourse provision prevents Hoosier Energy from maintaining a suit against Amoco Corporation because the sale-leaseback agreement defined Amoco Corporation as an "affiliate" of Amoco Tax and because Hoosier Energy's claim against Amoco Corporation is "based on" or otherwise "in respect to" the sale-leaseback agreement. To determine that Hoosier Energy's claim against Amoco Corporation is "based on" or "otherwise in respect to" the sale-leaseback agreement, we need look no further than Hoosier Energy's amended complaint, where it alleged that "[B]y reason of Amoco [Corporation's] contractual federal income tax election which was executed and made a part of this Agreement ... Amoco has been unjustly enriched...." The non-recourse provision thus precludes Hoosier Energy from maintaining a cause of action against Amoco Corporation. See e.g., Babson Bros. Co. v. Tipstar Corp., 446 N.E.2d 11, 16 (Ind.App.1983).[1]
 
 
 17
 Hoosier Energy responds by claiming that the non-recourse provision merely prevents it from suing Amoco Corporation for breach of contract but does not preclude it from suing Amoco Corporation on a non-contract theory such as unjust enrichment. However, Section 17(e) of the sale-leaseback agreement does not limit itself to breach of contract actions. And contrary to Hoosier Energy's position, there is no ambiguity as to whether this provision bars "non-contract" claims--it clearly does. Section 17(e) of the agreement states that Hoosier Energy has no recourse against Amoco Corporation for any amount payable under the agreement or for any claim "based on" the agreement or otherwise "in respect to" the agreement. This language broadly applies to any claim that is in any way "based on" the sale-leaseback agreement or otherwise "in respect to" the agreement. Accordingly, the above non-recourse provision prevents Hoosier Energy from maintaining a cause of action against Amoco Corporation for unjust enrichment.[2]
 
 
 18
 Because it is clear that there is no possibility that Hoosier Energy can maintain a cause of action against Amoco Corporation, the district court properly concluded that joinder of Amoco Corporation was fraudulent and properly dismissed Hoosier Energy's claim against Amoco Corporation for unjust enrichment. After dismissal of Amoco Corporation, complete diversity existed and removal was appropriate.
 
 B. Breach of Contract
 
 19
 After the district court dismissed the claim against Amoco Corporation it turned its attention to Hoosier Energy's claims against Amoco Tax for unjust enrichment and breach of contract. The district court dismissed both of these claims, concluding that Hoosier Energy failed to state a claim on either count. After allowing Hoosier Energy to amend its complaint, the district court again dismissed both counts. Hoosier Energy appeals only the district court's holding that it failed to state a claim for breach of contract. We review this holding de novo, Hi-Lite Products Co. v. American Home Prod. Corp., 11 F.3d 1402, 1405 (7th Cir.1993), and consider whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). It is undisputed that New York law governs this determination based on the choice of law provision contained in the sale-leaseback agreement.[3]
 
 
 20
 Hoosier Energy's claim for breach of contract is based on its position that Amoco Tax had agreed to pay Hoosier Energy additional compensation "if Amoco Tax ever treated the Property as five-year property for depreciation purposes...." This, however, is not what the sale-leaseback agreement provides. Rather, Section 3(c) of the sale-leaseback agreement states that additional compensation is due Hoosier Energy "if, prior to June 30, 1983, Regulations, proposed treasury regulations or a revenue ruling of the Internal Revenue Service shall be published...." The payment of additional compensation in this section is clearly conditional; Amoco Tax will pay additional compensation to Hoosier Energy only if the IRS published certain regulations prior to June 30, 1983. See e.g., Austin v. Canbar Assoc., Inc., 175 A.D.2d 195, 572 N.Y.S.2d 339, 340 (1991). "It is a basic tenet of contract law that '[b]efore liability can arise on a promise qualified by conditions expressed or implied in fact, such conditions must be fulfilled.' " Morse v. Ted Cadillac, Inc., 146 A.D.2d 756, 537 N.Y.S.2d 239, 240 (1989). See also Merritt Hill Vineyards, Inc. v. Windy Heights Vineyard, Inc., 61 N.Y.2d 106, 472 N.Y.S.2d 592, 460 N.E.2d 1077, 1081 (1984) (a condition precedent is an event which must occur before a duty of performance arises under a contract).
 
 
 21
 In this case, it is undisputed that the IRS did not publish prior to June 30, 1983 a "Regulation, proposed treasury regulation or revenue ruling" which categorized the electrical generating and transmission equipment as depreciable over five years. While it is true that the IRS published a proposed treasury regulation on February 16, 1984, clarifying that the electrical generating and transmission property was depreciable over five years, that is not the condition agreed to by Hoosier Energy and Amoco Tax. Therefore, under the terms of the contract, Amoco Tax did not have a duty to pay Hoosier Energy additional compensation. Morse, 537 N.Y.S.2d at 240; Merritt, 460 N.E.2d at 1081. See also B-B Co. v. Piper Jaffray & Hopwood, Inc., 931 F.2d 675, 678 (10th Cir.1991) ("Non-occurrence of a condition precedent discharges the other party's duty of performance.").
 
 
 22
 Hoosier Energy argues in response that the parties did not intend this provision to make payment of additional compensation contingent on the publication of certain documents prior to June 30, 1983, but rather they intended Hoosier Energy to receive additional compensation if at any time Amoco Tax was able to depreciate the property over five years. In considering a breach of contract action, however, "[w]e concern ourselves with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote." Sperling v. Great Am. Indem. Co., 7 N.Y.2d 442, 199 N.Y.S.2d 465, 166 N.E.2d 482, 486 (1960) (internal quotations omitted). A party "is bound by the plain terms of its undertaking rather than by what it might have intended, since in construing a plain contract, clear and explicit in its terms, a court is not at liberty, because of equitable considerations, to obviate objections which might have been foreseen and guarded against." Id. Here the sale-leaseback agreement plainly and unambiguously conditioned payment of additional compensation on the IRS issuing certain publications before June 30, 1983. Hoosier Energy is bound by this term and cannot overcome the condition by alleging some other intent. While we understand that the non-occurrence of this condition prevented Hoosier Energy from collecting an estimated twenty-five to twenty-eight million dollars, we nevertheless hold them to their bargain. These are sophisticated parties, who were represented by sophisticated law firms. They meticulously drafted a complex and detailed fifty-seven-page contract. We will not rewrite this contract for them. North Fork Bank & Trust Co. v. Romet Corp., 192 A.D.2d 591, 596 N.Y.S.2d 449, 450 (1993) ("courts are to enforce, not rewrite contracts."). See also David Fanarof, Inc. v. Dember Constr. Corp., 195 A.D.2d 346, 600 N.Y.S.2d 226, 227-28 (1993) ("When commercial parties expressly agree that a specified occurrence shall be a condition precedent to the creation or enforceability of a right or obligation, and there is no ambiguity arising out of other language in their contract, the only question for the court is whether the condition precedent has been complied with.").[4]
 
 
 23
 Hoosier Energy argues alternatively that even if payment of additional compensation was conditional, the condition was satisfied. Basically, Hoosier Energy asserts that the condition in Section 3(c) merely required the IRS to provide a favorable interpretation indicating that it would treat the electrical generating and transmission property as depreciable over five years. Hoosier Energy then points to private letter rulings that the IRS issued before June 30, 1983 in which the IRS acknowledged that it would treat electrical generating and transmission property as five-year property. The condition contained in Section 3(c) of the sale-leaseback agreement, however, expressly stated the type of publication that the IRS must issue prior to June 30, 1983-a Regulation, a proposed treasury regulation, or a revenue ruling. A private letter ruling was not one of the available options. The condition was therefore not satisfied.
 
 
 24
 Hoosier Energy also responds with a series of contract theories which it claims alter the above provision and somehow entitle it to additional compensation. As discussed below, however, none of these theories overcome the plain language of Section 3(c) which conditions additional compensation on the publication of certain documents prior to June 30, 1983.
 
 
 25
 1. Substantial performance.
 
 
 26
 In the first of these theories, Hoosier Energy argues that the June 30, 1983 condition was substantially performed when the IRS issued private letter rulings that gave Amoco Tax "reasonable assurance" that the IRS would interpret the tax law as treating the electrical generating and transmission property as five-year property. Initially, Hoosier Energy has at least two problems with this argument. First, Hoosier Energy had no control over the conditions; thus its own performance or lack thereof is not a factor. Both parties to the agreement could only wait until the IRS or some other government agency published a regulation or ruling. Second, partial or substantial performance is a remote possibility. The contract says that the regulation or ruling "shall be published." If, for example, a printers' strike or a mechanical breakdown prevented a publication intended or designated to occur before June 30, an argument for substantial performance could have weight. But private, nonpublished rulings or hoped-for or anticipated regulations are not enough.
 
 
 27
 If a party fails to perform an agreed-upon condition, a court may excuse this failure where there has been substantial performance. Kennedy v. Automotive Maintenance, Inc., 87 Misc.2d 190, 384 N.Y.S.2d 921, 922 (1976). But Hoosier Energy neither performed nor attempted to perform the condition. In fact, it could not do so because performance of the condition rested with a third party, the federal government. The doctrine of substantial performance cannot apply where there is not only a lack of even partial performance or an attempt to perform, because "we cannot ... excuse a complete failure to perform without either a valid reason for noncompliance or even an attempt to perform, the prerequisite considered by the parties sufficiently substantial to make it a condition precedent to payment." Witherell v. Lasky, 286 A.D. 533, 145 N.Y.S.2d 624, 627 (1955). Because there was a lack of even partial performance by Hoosier Energy, the doctrine of substantial performance is inapplicable in this situation.[5]
 
 
 28
 Hoosier Energy nevertheless attempts to use its inability to perform the condition as a rationale for excusing performance of the condition; Hoosier Energy argues that its inability to perform proves that it did not act in bad faith in failing to fulfill the condition. New York law, however, provides that where a contractual duty is conditioned upon a third party's performance (here, that of the federal government) the failure of the third party to perform will be excused only if it was caused by the third party's fraud or bad faith. Arena Constr. Co., Inc. v. Town of Harrison, 71 A.D.2d 647, 419 N.Y.S.2d 3 (1979); Joseph Davis, Inc. v. Merritt-Chapman & Scott Corp., 27 A.D.2d 114, 276 N.Y.S.2d 479, 483 (1967). It is thus the IRS' bad faith and not Hoosier Energy's good faith which is relevant, and Hoosier Energy did not allege any such bad faith by the IRS.
 
 
 29
 Hoosier Energy also argues that the June 30, 1983 condition should be excused under the doctrine of substantial performance because the date was immaterial. It is true that the applicability of the substantial performance doctrine rests in part on the materiality of the condition. See Witherell, 145 N.Y.S.2d at 627 ("Substantial performance might make compliance with an express condition unnecessary, but only when the departure from full performance is an inconsiderable trifle having no pecuniary importance."). But, as explained above, this doctrine also requires some performance. None occurred in this case. Moreover, "[i]n a contract action at law, it is presumed that the parties agree that time is of the essence unless contrary language is used in the agreement." Cooper-Rutter Assoc., Inc. v. Anchor Nat. Life Ins. Co., 193 A.D.2d 944, 597 N.Y.S.2d 799 (1993).
 
 
 30
 It is not clear why these sophisticated parties inserted the June 30 date in the contract. Hoosier Energy asserts that it was merely a point of reference--the date by which Amoco Corporation filed its annual tax returns. But this point of reference has significant impact on Amoco Tax's ability to make business planning decisions because it gives Amoco Tax some amount of certainty concerning its obligations. In any event, we must presume the date had significance, id., as the district court did when it determined that each party "bore a risk" that a regulation would be promulgated before or after June 30, 1983. He concluded "presumably, these risks were offset by the property price bargained for in the parties' contract." Whether or not there was a "risk" and whether such was bargained for is not ours to say. For whatever reason, the language is clear, and this court will not rewrite what in hindsight may have been a lopsided contract.
 
 
 31
 2. Forfeiture.
 
 
 32
 Hoosier Energy next argues that the June 30, 1983 condition should be excused because the condition would cause it to suffer a disproportionate forfeiture. Hoosier Energy cites Restatement (Second) of Contracts Sec. 229 (1981) in support of its position. Section 229 provides:To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange.
 
 
 33
 It is unclear whether New York would follow Section 229 of the Restatement. As of now, no New York cases have cited to this section. New York law, however, to some extent mirrors Restatement Section 229. The concept of "substantial performance" reflects the concepts of "excuse" and "immateriality" contained in Section 229. But as discussed above, New York's concept of "substantial performance" is unavailing in this case because no performance occurred on Hoosier Energy's side. Similarly Section 229 of the Restatement requires performance by the party seeking to avoid the forfeiture. Comment b of Section 229 provides: "[F]orfeiture is used to refer to the denial of compensation that results when the obligee loses his right to the agreed exchange after he has relied substantially, as by preparation or performance on the expectation of that exchange...." In this case, Hoosier Energy did not prepare to perform or perform in any way--it just sat back, waited and hoped that by June 30, 1983 the IRS would issue the appropriate publications--so no forfeiture occurred. Thus even if Section 229 governs our resolution of this case, it would weaken rather than strengthen Hoosier Energy's position.
 
 
 34
 Apart from Section 229 of the Restatement, New York recognizes equity's abhorrence of a forfeiture, especially when the losing party has made substantial financial commitments due to detrimental reliance. Rawcliffe v. Aguayo, 108 Misc.2d 1027, 438 N.Y.S.2d 697, 698 (1981). Like Section 229, however, essential to the equitable concept of forfeiture is that the party seeking to avoid forfeiture has rendered some performance. Where a party has yet to perform, no unreasonable forfeiture occurs. Id. In this case, Hoosier Energy agreed that it would receive additional compensation if certain tax publications were issued by a certain date. Hoosier Energy was not required to perform anything and in fact did not do so. In this case, Hoosier Energy's inability to claim additional compensation is not a forfeiture but rather is "the loss of an anticipated bargain." Id. Specifically, Hoosier Energy anticipated additional compensation (albeit a substantial sum totalling between twenty-five and twenty-eight million dollars) but this bargain did not pay off when the IRS failed to issue the requisite publications by June 30, 1983.
 
 
 35
 Moreover, even if Hoosier Energy had suffered a forfeiture, "[t]he law permits a man to make a contract which will result in a forfeiture; and when it is clear from the terms of the contract that the parties have so agreed, the forfeiture will be enforced." Winston Personnel Agency, Inc. v. Abcon Indus. Inc., 108 Misc.2d 695, 438 N.Y.S.2d 669, 670 (1980). See also Trustco Bank New York v. 37 Clark Street, Inc., 157 Misc.2d 843, 599 N.Y.S.2d 404, 405 (1993) ("[t]hough the law does not favor forfeiture, courts will enforce it if the parties clearly agreed to it.").
 
 
 36
 3. Waiver.
 
 
 37
 Hoosier Energy next claims that Amoco Tax waived the June 30, 1983 condition in a letter it sent to Hoosier Energy dated January 28, 1983. This letter set forth a sample calculation which demonstrated how to calculate a disposal of leased equipment. In setting forth the sample calculation, Amoco Tax assumed that the property was to be depreciated over five years. Hoosier Energy claims that this manifested an intent by Amoco Tax to waive the June 30, 1983 deadline. We disagree.
 
 
 38
 "It is well settled that 'the party for whose benefit a condition is inserted in an agreement may waive the condition.' " Scalia v. Glielmi, 200 A.D.2d 614, 606 N.Y.S.2d 722, 723 (1994). A "waiver is an intentional relinquishment of a known right...." Infotech Management Inc. v. Morse, 150 A.D.2d 638, 541 N.Y.S.2d 513, 515 (N.Y.App.1989). "It may be established by express statement or agreement, [or] by acts and conduct manifesting an intent and purpose not to claim the alleged advantage." Miller v. Miller, 156 A.D.2d 164, 548 N.Y.S.2d 209, 210 (1989). In this case, the letter Amoco Tax sent Hoosier did not mention the June 30, 1983 deadline. The letter also expressly stated that the sample calculation was "for illustrative purposes only." Moreover, at the time that the letter was written (January 1983) such an assumption would be entirely consistent with enforcement of the condition by Amoco Tax because the IRS had until June 30, 1983 to issue the appropriate publications.
 
 
 39
 Hoosier Energy also claims that Amoco Tax waived the condition by failing to inform it that it intended to require performance of the condition. We disagree. "To read into the contract a requirement that the party for whose benefit the condition was inserted must make a demand for the performance thereof is but another way of stating that the clause is not a condition precedent, but a mere promise...." Witherell, 145 N.Y.S.2d at 627.
 
 
 40
 Finally, Hoosier Energy claims that the waiver issue is an issue of fact which must be left to the jury. The January 28, 1983 letter, however, is insufficient as a matter of law to support a theory of waiver.
 
 
 41
 4. Estoppel.
 
 
 42
 Similar to the waiver argument, Hoosier Energy alleges that Amoco Tax is estopped from asserting the June 30, 1983 condition because of its use of a five-year depreciation base in the sample calculations set forth in the January 28, 1983 letter. The doctrine of estoppel provides that a person is precluded by his conduct (or silence when there is a duty to speak) from asserting a right which he otherwise had. Kearns v. Manufacturers Hanover Trust Co., 51 Misc.2d 34, 272 N.Y.S.2d 535, 541 (1966); Simmons v. Westwood Apart. Co. Inc., 46 Misc.2d 1093, 261 N.Y.S.2d 736, 740 (1965).
 
 
 43
 As discussed above, Amoco Tax did not have a duty to inform Hoosier Energy that it intended to enforce the June 30, 1983 condition. Witherell, 145 N.Y.S.2d at 627. Also, as explained above, the January 1983 letter did not mention the June 30, 1983 condition, much less indicate that Amoco Tax would not insist on its compliance. These allegations, as a matter of law, are not a basis to estop Amoco Tax from enforcing the June 30, 1983 condition.
 
 III. Conclusion
 
 44
 "It is well settled that courts are to enforce, not rewrite, contracts." North Fork Bank, 596 N.Y.S.2d at 449-450. We accordingly reject Hoosier Energy's attempt, under the guise of the principles of substantial performance, forfeiture, waiver and estoppel, to rewrite the sale-leaseback agreement. For these and the foregoing reasons, we affirm.
 
 
 
 *
 Hon. Walter J. Cummings and Hon. John L. Coffey took no part in the consideration of this petition
 
 
 [1]
 The district court applied Indiana law to determine whether Hoosier Energy had a claim against Amoco Corporation. Amoco Corporation asserts that the district court erred in determining that Indiana law applied, contending that New York law governs Hoosier Energy's claim against it because the sale-leaseback agreement contained a choice-of-law provision identifying New York law as controlling. The district court rejected Amoco Corporation's position, reasoning that the choice of law provision did not apply to Hoosier Energy's claim against it because it was not a party to the sale-leaseback agreement. This rationale is questionable given that the district court later concluded that Amoco Corporation was a party to the agreement, and as such Hoosier Energy could not maintain an unjust enrichment claim against Amoco Corporation. Hoosier Energy explains this apparent contradiction by noting that Amoco Corporation was a party to the sale-leaseback agreement but only for purposes of making an election for federal tax purposes and not for purposes of the choice of law agreement. We need not consider this dispute, however, since both Indiana and New York law preclude Hoosier Energy from suing Amoco Corporation for unjust enrichment based on the non-recourse provision. Kaplan v. Cott Beverage Corp., 22 A.D.2d 682, 253 N.Y.S.2d 503, 504 (1964) (party claiming redress for amount released cannot recover in unjust enrichment); Metropolitan Life Ins. Co. v. Noble Lowndes Int'l, Inc., 192 A.D.2d 83, 600 N.Y.S.2d 212, 215, 217, leave to appeal granted, 82 N.Y.2d 664, 610 N.Y.S.2d 152, 632 N.E.2d 462 (1994) (party cannot recover damages under theory of unjust enrichment which are expressly barred by written agreement limiting damages)
 
 
 [2]
 The district court also concluded that Hoosier Energy could not possibly state a claim against Amoco Corporation for unjust enrichment because Amoco Corporation was not unjustly enriched and because an unjust enrichment claim cannot be sustained when a contract exists covering the subject matter at issue. See, e.g., Engelbrecht v. Property Dev., Inc., 156 Ind.App. 354, 296 N.E.2d 798, 801 (1973) ("[w]here there is a contract controlling the rights of the parties there can be no recovery on the theory of quantum meruit "). We need not reach these issues because the non-recourse provision clearly bars Hoosier Energy's unjust enrichment suit against Amoco Corporation
 
 
 [3]
 Hoosier Energy and Amoco Tax are clearly both parties to the sale-leaseback agreement and thus they do not dispute the application of the New York choice of law provision, as they did for Hoosier Energy's claim against Amoco Corporation. See supra 1315-16 n. 1
 
 
 [4]
 Hoosier Energy attempts to overcome the expressed intent of the sale-leaseback agreement by focusing on the standard for 12(b)(6) dismissal and arguing that this court must accept as true its allegations concerning the parties' underlying intent. A court need not accept as true a plaintiff's allegations concerning the meaning of an unambiguous contract. See Beltrone Constr. Co., Inc. v. New York, 189 A.D.2d 963, 592 N.Y.S.2d 832, 834 (1993). Rather, where a contract is unambiguous, "no need exists to resort to other means of interpretation, and the effect must be given to the parties' intent as indicated by the language itself." Samuels v. Wilder, 871 F.2d 1346, 1351 (7th Cir.1989) (quoting Leslie Fay, Inc. v. Rich, 478 F.Supp. 1109, 1113 (S.D.N.Y.1979)). See also Shames v. Abel, 141 A.D.2d 531, 529 N.Y.S.2d 344, 346 (1988); Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456, 161 N.Y.S.2d 90, 141 N.E.2d 590, 593 (1957) (interpretation of condition precedent is a matter of law if the condition on its face is clear and unambiguous). Hoosier Energy does not maintain that Section 3(c) is ambiguous; nor do we think that it is. Hoosier Energy is accordingly bound by the terms of the sale-leaseback agreement which conditioned additional compensation on the issuance of certain publications by June 30, 1983
 Hoosier Energy also does not argue on appeal that some basis for reformation exists.
 
 
 [5]
 About all Hoosier Energy could do to get under the shade of this argument would be to request or petition the government agencies to publish something before the deadline, or else at least attempt to negotiate an extension of the date set out in the contract. But even then, unless these efforts met with at least some success, Hoosier Energy would be hard-pressed to claim substantial or even partial performance. In any event the parties point to nothing in the record that would demonstrate any effort by Hoosier Energy to meet the condition before the deadline arrived. In fact, Hoosier Energy flatly acknowledges that "had it known that Amoco Tax would not make the additional payment unless the Treasury Department made a publication prior to June 30, 1983, it would have formally requested the IRS to publish a revenue ruling prior to that date."
 
 
 **
 Hon. Paul E. Plunkett, of the Northern District of Illinois, sitting by designation